22674. RIVES v. ATLANTA NEWSPAPERS, INC.

ARGUED OCTOBER 12, 1964—DECIDED NOVEMBER 23, 1964—. REHEARING DENIED DECEMBER 15, 1964.

486

*Marson G. Dunaway, Jr.,* for plaintiff in error.

*Forrest C. Oates, Henry A. Stewart, B. P. Gambrell,* contra.

*Sell & Comer, Foley, Chappell, Young, Hollis & Schloth,* for parties at interest not parties to record.

CANDLER, Justice. Since the judgment of the Court of Appeals which we have for review dealt with a ruling on a motion to dismiss in the nature of a general demurrer we must at the outset recognize, apply and follow the applicable rule in such cases, which is—construe the petition most strongly against the petitioner, which means, that the absence of an allegation of a material fact means the non-existence of such fact. *Hulsey v. Interstate Life &c. Ins. Co.,* 207 Ga. 167 (60 SE2d 353); *Chalverus v. Wilson Mfg. Co.,* 212 Ga. 612 (1) (94 SE2d 736). When this rule is applied here to a suit for damages because of alleged newspaper libel, *Code* § 22-1102 is not complied with since it is not alleged that the alleged tort originated in Polk County. This absence of essential allegations when coupled with the allegation that the principal place of business of the defendant is in Fulton County and that the papers in question were transported to Polk County, requires a holding under the rule of strict construction that the alleged tort did not originate in Polk County but in Fulton County. When thus construed in conformity with the established rule for construction on demurrer or a motion to dismiss, the motion which raised the question of want of venue was properly sustained.

But this case involves other difficult questions of law, the solution of which is essential to a sound decision. There can be no reasonable doubt as to what constitutes newspaper libel, nor that it is of statutory rather than common law origin in view of *Code* § 105-703. Nor is venue fixed by the common law but rather by statute. *Code* § 22-1102. Extreme confusion concerning certain elements of libel has arisen because of this

court's decision in *Baker v. State,* 97 Ga. 452 (25 SE 341), and *Central of Ga. R. Co. v. Sheftall,* 118 Ga. 865 (45 SE 687). Headnote 3 of the latter decision is: "Each publication gives rise to a separate cause of action, though all may be joined in one suit." There the exposure to public view was effected by separate means, and it was not newspaper libel which was under consideration. But the statement that each publication is a separate cause of action has engulfed the courts in a maze of definitions of the word "publication." Overlooking all other relevant considerations it might reasonably be concluded that when viewed by each person it thereby becomes a separate cause of action, but in *Atlanta Journal Co. v. Pearce,* 145 Ga. 694 (89 SE 759), this court in passing upon an alleged newspaper libel said: "The editorial [which appeared in a succeeding publication] does not aid the news item, except in so far as it might tend to show malice and aggravation of the tort; and to that extent it was legitimate to allege the editorial." The decision went on to hold in effect that publication on another day would constitute another libel. But in both instances the libel was held to be only one for each issue of the paper irrespective of the number of people who read it. The point we wish to put at rest now and for good, is that one publication is only one libel, regardless of the times it was exposed to the view of different people, but each new printing of the paper and its exposure to public view constitutes a libel actionable at law under *Code* § 105-703. Our decision in the *Baker* case, supra, involved a criminal prosecution for libel, and the venue of a criminal case is where the crime is committed. On this basis of law it was held that the exposure of the libel in a newspaper in a given county fixed the venue of the crime in that county. Here we have a suit for a newspaper libel, which is a tort, and *Code* § 22-1102 provides that suit therefor may be brought against the corporation-tortfeasor in the county where it has an agent and place of business if the tort originated in that county. Courts must never overlook the fact that the newspaper libel defined in *Code* § 105-703 is the printing therein of libelous matter. But it places as a condition precedent to suing therefor that it be published. Here enters the troublesome question of whether in

addition to placing it available for public view there must be proof that it was actually read. We think that whether or not it is read is immaterial once it is shown that it was exposed to public view.

It is permissible to give judicial consideration to legislative construction. *Thompson v. Talmadge,* 201 Ga. 867 (41 SE2d 883). We think a plain case of legislative construction is found in *Code Ann.* § 105-720 (Ga. L. 1958, p. 54; 1960, pp. 198, 199) where provision is made for a retraction of newspaper libel. There the legislature significantly employed the singular in "request," "retraction," and "allegedly libelous statement." By its express terms none of these is required more than once. This could only mean that the legislature construed the libel statute to mean one cause of action, and only one for the combined process of printing and publishing. Thus the number of readers in no wise increases the one libel, nor constitutes multiple causes of action. *Giles v. State,* 6 Ga. 276, contains a well-reasoned discussion of this question. It is there said: "The moment a man delivers a libel from his hands, his control over it is gone; he has shot his arrow and it does not depend upon him whether it hits the mark or not. There is an end of the *locus penitentiae—his offense is complete*—all that depends upon him is consummated; and from that moment, upon every principle of common sense he is liable to be called upon to answer for his act."

When the publisher delivered papers containing libel, if they did, for public exposure, libel was complete. To allow a suit for damages each time a different person sees the newspaper would unreasonably shackle the press and might quickly bankrupt it, thus doing great harm to both the publisher and the readers. Unless the language employed by the legislature demands such an unreasonable construction, courts should not do so and thus attribute to the legislature an unreasonable intention.

The trial court did not err in sustaining the motion to strike the petition, and it was error for the Court of Appeals to reverse that judgment.

*Judgment reversed. All the Justices concur, except Almand, Mobley and Quillian, JJ., who dissent.*

ALMAND, Justice, dissenting. For the cogent reasons stated by Judge Pannell on this question in his concurring opinion when this case was before the Court of Appeals (110 Ga. App. 184, 138 SE2d 100), I dissent from the judgment of the majority which has the effect of affirming the order of the trial court.

I am authorized to say that Justices Mobley and Quillian concur in this dissent.