Manuel Díaz Segarra y Cruz María Segarra, ambos por sí y la Sociedad Legal de Gananciales compuesta por ellos, demandantes y recurridos, *v.* El Vocero de Puerto Rico, Inc., demandada y peticionaria.

*Número:* O-76-408      *Resuelto:* 30 de marzo de 1977

*Rivera Cestero & Marchand Quintero,* abogados de la peticionaria; no comparecieron los abogados de los recurridos.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

Los esposos recurridos, vecinos de Mayagüez, presentaron ante el Tribunal Superior de aquella Sala de su domicilio, demanda de daños y perjuicios por libelo contra la corporación editora del periódico "El Vocero de Puerto Rico" predicada en la Ley de Libelo y Calumnia de 1902 (32 L.P.R.A. sec. 3141 y ss.) y en el Art. 1802 del Código Civil (31 L.P.R.A. sec. 5141), en cuyo escrito alega el demandante haber sido difamado, expuesto al desprecio del pueblo, privado de la confianza pública y trato social y afectado en su reputación y privacidad por una noticia y reportaje publicado en dicho diario, que le imputa falsamente la comisión de un delito.

El periódico demandado solicitó traslado del pleito para la Sala de San Juan por ser en esta ciudad Capital donde se imprime y publica, invocando el Art. 79 del Código de Enjuiciamiento Civil. La Sala de Mayagüez denegó el traslado y al recurrir el periódico, expedimos *certiorari,* toda vez que se suscita la cuestión de competencia determinada por el lugar donde el demandado realizó el supuesto acto dañoso y no por aquél donde se sufrió la pérdida. *Santos* v. *Porto Rican Express Co.,* 52 D.P.R. 571, 572 (1938); *Castellón* v. *Padín,* 59 D.P.R. 275, 278–9 (1941).(¹)

La parte demandante se ha circunscrito a una sola acción civil contra el periódico promovida en el tribunal de su domicilio al que acude en primer término para reivindicar

---

(¹) Para una estimación integral del desarrollo del concepto de sala competente en acciones por daños y perjuicios, deben verse, además, *Zayas Pizarro* v. *Molina* y *Usera* v. *Luce & Co.,* citados en esta opinión.

su nombre y derecho de intimidad. No puede tomarse su demanda, estrictamente limitada al foro de Mayagüez, como recurso al amparo de la regla de derecho común de causa de acción múltiple que reconoce una razón de pedir remedio por cada ejemplar del periódico vendido o entregado. Prosser, *The Law of Torts*, pág. 769, ed. 1971; *Restatement of the Law of Torts*, Vol. 3, Sec. 578; Salmond, *The Law of Torts*, pág. 201, ed. 15ª (1969). Dicha norma no tiene vigencia en Puerto Rico donde consideramos que la protección de la dignidad humana contra ataques abusivos, y del derecho de intimidad es factible sin acudir a remedios que puedan resultar en mengua y erosión de la libertad de prensa. La dignidad del ciudadano y la libertad de palabra son sujetos del ordenado equilibrio de intereses que informa el régimen constitucional. Estos valores preeminentes están resguardados por la "regla de la publicación única" o unitaria que adoptamos, según la cual la edición completa del periódico, revista o libro se considera una sola publicación que da lugar en caso de libelo, a una sola causa de acción, quedando la extensión del agravio, la distribución y circulación como elementos valorativos de daños. Prosser, *ante*, pág. 769; *Restatement of the Law, Second, Torts, Tentative Draft No. 20, 1974*, sec. 577A.

■ Preceptúa el Art. 79 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 405) que han de verse en el distrito en que la causa del litigio, *o alguna parte de ella*, tuvo su origen, los pleitos para recobrar daños y perjuicios de acuerdo con los Arts. 1802 y 1803 del Código Civil (31 L.P.R.A. secs. 5141 y 5142), o a virtud de cualquier otro precepto de ley. La enmienda introducida a este Art. 79 por Ley Núm. 18 de 11 de abril de 1935, trajo a su ámbito las acciones fundadas en libelo. *Zayas Pizarro* v. *Molina*, 48 D.P.R. 920 (1935); *Usera* v. *Luce & Co.*, 58 D.P.R. 290, 298 y ss. (1941). Si bien el periódico se imprimió en San Juan el impacto generador del daño no cobra relieve real hasta que el periódico se vende y circula en Mayagüez desplegando su contenido ante los lec-

tores que conocen y conviven con los demandantes. De modo que como "causa de litigio" tiene mayor dimensión la distribución en Mayagüez que la impresión en San Juan y es competente para conocer del pleito la sala de Mayagüez donde esa parte principal de la causa del litigio tuvo su origen. Se trata de "causa" y no exclusivamente del lugar donde se sufre el daño a que se limitaron las decisiones en *Zayas Pizarro* v. *Molina, Santos* v. *Porto Rican Express Co.,* y *Castellón* v. *Padín,* ante.

No es gravoso para la libertad de prensa ventilar un pleito de libelo en la sala correspondiente al domicilio del demandante, lugar donde su reputación alcanza valía y estima, o decae en la opinión pública.

En un país de 3,600 millas cuadradas(2) como el nuestro, con un moderno sistema vial, la sala de justicia más lejana de un periódico editado en San Juan está a escasamente 1 1/2 hora en automóvil, y con los superiores recursos que el periódico tiene a su disposición en cualquier Sala del Tribunal General, no vemos justicia en obligar a la parte más débil, que es al mismo tiempo la parte pasiva en el desencadenamiento de hechos que dan lugar al pleito, a litigar en foro extraño a su residencia. Un periódico, que además de instrumento de información y de libre discusión de ideas, es una empresa más o menos lucrativa que vende y recauda el precio de sus ediciones que circulan en Mayagüez, no debe evadir la competencia de esta Sala en cuya demarcación territorial circula prestando un valioso servicio, pero también haciendo negocios.

■ Después que la Constitución de 1952 organizó los tribunales de Puerto Rico en sistema unificado en lo concerniente a jurisdicción, funcionamiento y administración, están fuera de lugar las interpretaciones técnicas que antaño dis-

---

(2) En casos de daños por libelo son los abogados los que principalmente han de moverse de una sala a otra a defender el periódico. Designar a San Juan como foro obligado resulta en conveniencia para los abogados de una parte, sin aparente provecho especial para la libertad de prensa.

854

tribuían la competencia entre islas de jurisdicción.(3) Tampoco puede valorarse esta cuestión a la luz de precedentes norteamericanos que repudian la idea de permitir a un demandante en libelo la ventaja indebida de escoger el foro que estime de mejor prospecto para el éxito de su causa en términos de cuantía de daños contra el periódico. Esa es probablemente una razón válida en aquellas jurisdicciones donde las acciones civiles pueden ventilarse ante un jurado que por pura solidaridad con su vecino el demandante se inclina a traer un veredicto inmerecido o exagerado contra el periódico. En Puerto Rico, sin embargo, el tribunal de derecho que juzga un caso de libelo tiene una excepcional y uniforme objetividad en todas sus Salas.

█ Habiendo advenido Puerto Rico a la integración jurisdiccional de su sistema judicial, los antiguos criterios sobre "sala competente" están bajo exigente proceso de revisión que reconoce la preeminencia de un valor de justicia sobre las nociones geográficas o territoriales.

*Se anulará el auto expedido. Confirmada.*

El Juez Presidente Señor Trías Monge emitió opinión disidente.

—O—

Opinión disidente emitida por el Juez Presidente, Señor Trías Monge.

San Juan, Puerto Rico, a 30 de marzo de 1977

La parte recurrida presentó en la Sala de Mayagüez del Tribunal Superior demanda de daños y perjuicios por libelo contra El Vocero de Puerto Rico, Inc. La parte demandada, aquí peticionaria, solicitó el traslado de la acción a San Juan,

---

(3) Si un periódico de circulación general es bueno para satisfacer el debido proceso en el emplazamiento por edictos que autoriza la Regla 4.5 de Procedimiento Civil, su función tiene un adicional nexo a la competencia general del tribunal de primera instancia que excluye su reclamo de San Juan como foro único.

que es donde se imprime el periódico. Se denegó el traslado en base a lo dispuesto en el Art. 78 del Código de Enjuiciamiento Civil de 1933, 32 L.P.R.A. sec. 404. Se recurrió de esta resolución.

En virtud de lo dispuesto en la Regla 3 de Procedimiento Civil, se mantuvieron en vigor las normas relativas a la competencia territorial de las cortes prevalecientes al momento de aprobarse la Constitución de Puerto Rico. (¹) Debemos examinar por tanto la relación existente entre los Arts. 78, 79, y 81 del Código de Enjuiciamiento Civil de 1933, 32 L.P.R.A. secs. 404, 405, 407. Recordemos su texto:

Art. 78: "La residencia legal de los comerciantes, sociedades, corporaciones y asociaciones a todos los fines legales será el pueblo donde tuvieren su centro de operaciones u oficina principal. Los comerciantes, sociedades, corporaciones y asociaciones que tuvieren oficina o agente en diferentes distritos judiciales, podrán ser demandados en cualquiera de dichos distritos, o en el que se hubieren obligado, a elección del demandante."

Art. 79: "Deberán verse en el distrito en que la causa del litigio, o alguna parte de ella, tuvo su origen, sin perjuicio de

---

(¹) La Constitución de Puerto Rico dispone en su Art. V, Sec. 2 que "Los tribunales de Puerto Rico constituirán un sistema judicial unificado. . . . La Asamblea Legislativa, en cuanto no resulte incompatible con esta Constitución, podrá crear y suprimir tribunales, con excepción del Tribunal Supremo, y determinará su competencia y organización." Fuente primaria del Art. V de nuestra Constitución fue la legislación inglesa de 1873, que desarrolla el concepto del tribunal unificado. Bajo dicha legislación, ni el principio de la competencia jerárquica ni el de la competencia territorial está sujeto a reglas rígidas. Ambos se someten a criterios de conveniencia individual y social y, ante todo, a la buena marcha del sistema de justicia, para evitar charadas y enmarañamientos jurídicos. "Supreme Court of Judicature (Consolidation) Act", Geo. 5 c. 49, 25 Halsbury's *Statutes of England,* 3rd ed., sec. 55 *et seq.* Se advertirá que la Constitución se refiere tan solo a la competencia entre los tribunales y no entre las salas de éstos, lo cual plantea la cuestión de si nuestra Constitución permite la adopción de una regla análoga a la inglesa. Dado que la Regla 3 de Procedimiento Civil abarca tanto los problemas de competencia territorial como los de índole jerárquica, no es necesario en este caso medir el impacto de la parte citada del Art. II, Sec. 2, sobre los Arts. 78, 79 y 81 del Código de Enjuiciamiento Civil de 1933, 32 L.P.R.A. secs. 404, 405 y 407.

la facultad de la corte para cambiar el lugar de la vista, los pleitos por los siguientes motivos:

1. Para obtener el importe de una indemnización contra una compañía de seguros proveniente de un contrato de póliza de seguro o para recobrar daños y perjuicios de acuerdo con las secs. 5141 y 5142 del Título 31, o a virtud de cualquier otro precepto de ley, o para obtener el importe de una confiscación, excepto cuando se decreta por un delito cometido en una extensión de agua colindante con dos o más distritos en cuyo caso la demanda podrá entablarse en cualquier distrito contiguo a dicha extensión de agua y frente al sitio donde se cometió el delito.

2. Contra un empleado público, o persona especialmente nombrada para cumplir los deberes de aquél, por cualquier acto que hubiere cometido con ocasión de su empleo; o contra una persona que, por orden suya o como su auxiliar, hiciere algo relacionado con los deberes de dicho empleado."

Art. 81: "En todos los demás casos el pleito deberá verse en el distrito en que residieran los demandados, o algunos de ellos, al iniciarse el litigio, con excepción de los casos de alimentos, cuando el demandante fuere menor de 21 años de edad al momento de iniciarse el litigio, en los cuales casos el pleito deberá verse en la sala del Tribunal Superior de Puerto Rico correspondiente a la demarcación territorial en que residiera el demandante; y si ninguno de los demandados residiere en la Isla de Puerto Rico, o si residiendo en ella, ignorase el demandante el distrito en que residan, el pleito podrá seguirse en cualquier distrito designado por el demandante en la demanda; y si el demandado estuviere a punto de ausentarse de esta Isla, el pleito podrá seguirse en el distrito en que cualquiera de las partes resida, o en que se haga la citación, sin perjuicio de la facultad del tribunal para cambiar el lugar del juicio, según lo dispuesto en este Código."

La relación entre estas disposiciones consiste en que el Art. 81 enuncia la norma general: todos los casos deben verse en el distrito en que residan los demandados o algunos de ellos al iniciarse el litigio, a excepción de los pleitos mencionados en el Art. 79 y el propio Art. 81. En estos últimos se aplican otras normas que pueden o no resultar en que la controversia se dirima en otra sala. La función del Art. 78,

erróneamente aplicado en esta causa, es tan solo definir la residencia legal de los comerciantes, sociedades, corporaciones y asociaciones para los casos regidos por la norma general que fija el Art. 81.

El artículo que gobierna el caso actual es claramente el 79. Esta disposición proviene básicamente del Art. 206 del Código de Enjuiciamiento Civil de Idaho de 1881, que a la vez se inspiró en el Art. 393 del correspondiente código californiano de 1872. Compárese: el Art. 63 de la Ley Española de Enjuiciamiento Civil de 1881, vigente en Puerto Rico desde 1885. Idaho y California seguían la regla de la residencia del demandado en los casos de daños y perjuicios y al aprobarse en Puerto Rico el Código de Enjuiciamiento Civil de 1904, el Art. 79 leía originalmente en modo análogo al de Idaho y distinto al actual. La Ley Núm. 34 de 21 de abril de 1928 enmendó, no obstante, la antigua fraseología para ordenar que "Deberán verse en el distrito en que la causa del litigio, o alguna parte de ella, tuvo su origen, sin perjuicio de la facultad de la corte para cambiar el lugar de la vista, los pleitos . . . para recobrar daños y perjuicios de acuerdo con el Art. 1803[2] del Código Civil. . . ."

En *Zayas Pizarro* v. *Molina*, 48 D.P.R. 920 (1935), se resolvió que las acciones por libelo y calumnia seguían comprendidas en el Art. 81, ya que se derivaban de una ley especial y no del Art. 1802. Se apuntó, sin embargo, la posibilidad de un resultado distinto bajo otra enmienda recién efectuada por la Ley Núm. 18 de 11 de abril de 1935, no invocable en *Zayas Pizarro*. Dicha ley se refirió a acciones "para recobrar daños y perjuicios de acuerdo con los artículos 1803 y 1804 . . . o a virtud de cualquier otro precepto de ley. . . ." Aunque en contexto distinto a los casos de libelo y calumnia, el *dictum* de *Zayas Pizarro* se convirtió en doctrina en *Usera* v. *Luce & Co.*, 58 D.P.R. 290, 296 (1941). El pleito presente

---

(2) En 1928 este artículo correspondía al 1802 actual.

deberá verse en consecuencia "en el distrito en que la causa del litigio, o alguna parte de ella tuvo su origen, sin perjuicio de la facultad de la corte para cambiar el lugar de la vista. . . ."

La verdadera dificultad de este caso, como puede verse, no reside en la determinación del artículo del Código de Enjuiciamiento Civil aplicable en lo que toca a la competencia territorial de los tribunales. El meollo del problema es determinar dónde surge la causa de acción por libelo contra un periódico e interpretar el resto del lenguaje citado. El asunto debe examinarse con extremo cuidado. Los casos de libelo difieren considerablemente de otras acciones de daños y perjuicios. Los valores en pugna son muy diferentes. De adoptarse ciertos antiguos enfoques, las consecuencias para la libertad de prensa y expresión pueden ser devastadoras, sin que ello sea necesario para la debida protección de la honra y del derecho a la intimidad.

Ejemplo de esto último es la regla del derecho común conocida como la de la publicación múltiple. *Duke of Brunswick* v. *Harmer*, 117 Eng. Rep. 72 (1849); Salmond, *The Law of Torts*, 15th ed., London, Sweet & Maxwell, 1969, pág. 201. Esta fue la norma adoptada por el Instituto Americano del Derecho, *Restatement of the Law of Torts*, vol. 3, sec. 578. Todavía prevalece en varios estados de Estados Unidos. Prosser, *Handbook of the Law of Torts*, 4th ed., St. Paul, Minn., 1971, pág. 769, n. 91. Esta regla consiste en sostener que cada venta o entrega separada de una copia de la misma edición de un periódico constituye base de por sí para una causa de acción distinta. Puede haber tantas causas de acción como ejemplares se impriman y distribuyan.

De adoptarse la regla del derecho común en Puerto Rico, no cabría duda de que se denegó correctamente el traslado. El demandante no solo podía demandar en Mayagüez, sino también en cualquier otro distrito en que hubiere circulado la edición aquí envuelta de *El Vocero*. La doctrina de la pu-

blicación múltiple, sin embargo, no tiene vigencia en Puerto Rico.

Diversas razones abonan esta conclusión. El derecho común angloamericano no rige en Puerto Rico *ex propio vigore;* depende esencialmente de que se legisle la regla específica en controversia.([3]) Nuestra ley sobre libelo y calumnia de 19 de febrero de 1902, 32 L.P.R.A. sec. 3141 *et seq.,* no lo hace ni expresa ni implícitamente. En los setenta y cinco años que lleva de vigencia esta ley este Tribunal nunca ha adoptado la norma de la publicación múltiple. Tal actitud está en consonancia con poderosas razones de orden público y los desarrollos más recientes. La regla de la publicación múltiple no representa a nuestro entender el equilibrio más juicioso entre los intereses en conflicto. Es excesivamente onerosa para el desenvolvimiento de una prensa libre. Contrasta con la mayor armonía que produce entre los valores en juego la regla de la publicación única. En la mayoría de los estados norteamericanos prevalece ya la doctrina de publicación única. Prosser, *op. cit.,* 769; Prosser, *Interstate Publication,* 51 Mich. L. Rev. 959 (1953); Leflar, *The Single Publication Rule,* 25 Rocky Mt. L. Rev. 263 (1963). Los Comisionados sobre las Leyes Estatales Uniformes la recomiendan; véase la *Uniform Single Publication Act,* 13 ULA 519. El Instituto Americano del Derecho, revocando su posición anterior, también la apoya. *Restatement of the Law Second—Torts—*Tent. draft no. 20, sec. 577A.

La adopción en Puerto Rico de la norma de la publicación única no resuelve estrictamente, no obstante, el problema de dónde se originan las causas de libelo. La regla en nuestra jurisdicción respecto a acciones por daños y perjuicios es que

---

([3]) Puede igualmente acudirse al derecho común cuando ello es necesario para la interpretación de normas de origen angloestadounidense o al resolver un pleito bajo el Art. 7 del Código Civil, 31 L.P.R.A. sec. 7, en cuyo caso el Tribunal también puede escoger otra norma, extranjera o de confección propia, que considere más equitativa.

el distrito donde debe verse el caso es aquél "donde se realizó el acto que ocasionó el daño y no donde se sufrió la pérdida. . . ." *Santos* v. *Porto Rican Express Co.*, 52 D.P.R. 571 (1938). Al mismo efecto: *Castellón* v. *Padín*, 59 D.P.R. 275 (1941). ([4]) Conforme a esta doctrina, el acto generador del daño es incuestionablemente la impresión del periódico, seguida de su circulación inicial. ([5]) El problema no consiste en medir el impacto o la dimensión del daño.

La mayoría de las cortes estadounidenses considera que los juicios de libelo deben celebrarse en el lugar en que el periódico se imprimió y se dio a la publicidad originalmente. *Age—Herald Pub. Co.* v. *Huddleston*, 92 So. 193 (Ala. 1921); *River* v. *Atlanta Newspapers*, 139 S.E.2d 395 (Geo. 1964); *O'Malley* v. *Statesman Printing Co.*, 91 P.2d 357 (Idaho 1939); *Forman* v. *Mississippi Publishers Corp.*, 14 So.2d 344 (Miss. 1943); *Houston* v. *Pulitzer Publ. Co.*, 155 S.W. 1068 (Mo. 1913); *Litzinger* v. *Pulitzer Publ. Co.*, 356 S.W.2d 81 (Mo. 1952); Prosser, *loc. cit.*; cf. *Firstamerica Develop. Corp.* v. *Daytona Beach N.-J. Corp.*, 196 So.2d 97 (Fla. 1967).

La doctrina contraria ha sido criticada con severidad por estimarse que les permite a los demandantes en libelo la ventaja indebida de escoger el foro que ellos consideren más acogedor para el éxito de su causa y la cuantía de los daños, si algunos, a percibir del periódico. Cobb, *Venue: Florida Rejects Single Publication Rule.*, 19 U. Fla. L. Rev. 654 (1967). Esta amenaza a la libertad y estabilidad de la prensa ha llevado a que se sugiera una enmienda a la Ley Uniforme para que disponga que la acción de libelo se origina al tiempo de la primera publicación. Knakal, *Problems under the Uniform*

---

([4]) La situación prevaleciente en España es análoga. Pera Verdaguer, *Jurisdicción y Competencia*, 2ª ed. 1958, pág. 183; Aragoneses Alonso, *Técnica Procesal*, 1955, pág. 150.

([5]) Recuérdese que en Puerto Rico no es necesario, para sostener una acción de libelo, probar que el escrito ha sido leído por persona alguna. Basta exponerlo, a sabiendas, donde pueda leérsele. 32 L.P.R.A. sec. 3148.

*Single Publication Act*, 15 Wash. & Lee L. Rev. 321, 327 (1958).

No se ha cuestionado ante nos que *El Vocero*, aunque circule en todo el país, se publica en San Juan. Disiento de la opinión del Tribunal denegando el traslado de la causa a la Sala de San Juan del Tribunal Superior.

Conviene recordar, por último, que el Art. 79 del Código de Enjuiciamiento Civil faculta a la corte competente en estos casos a cambiar el lugar de la vista. Originalmente el Código especificaba en su Art. 83 las causas en que podrá fundarse el juez para efectuar el traslado, pero este artículo se derogó por la Regla 72 de Procedimiento Civil. Entendemos que el propósito de esta derogación no fue ciertamente eliminar el poder de traslado a que alude el Art. 79. Dicho poder deberá ejercerse en las circunstancias que la equidad ordene.

Revocaría la resolución recurrida.