## 65684. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY v. COASTAL TRANSMISSION SERVICE, INC. et al.

SOGNIER, Judge.

Coastal Transmission Service, Inc. (Coastal) and its president and owner, Richard Barrow, sued Southern Bell Telephone and Telegraph Company (Southern Bell) for libel. The alleged libel appeared in Coastal's display advertisement in the 1981 Southern Bell yellow pages telephone directory. Instead of the Coastal slogan, "Get it in gear," Southern Bell printed the words, "Get it in rear." Barrow's name appeared in the body of the ad as the owner of Coastal. Both plaintiffs alleged that the ad exposed them to public hatred, contempt, and ridicule, causing injury to their reputations for honesty, integrity, and virtue. The complaints charged that as a result of the ad, both plaintiffs received numerous telephone calls and other communications many of which were obscene. Barrow alleged embarrassment and harassment of himself and his family. The trial court denied Southern Bell's motions for summary judgment and the case went to trial. The jury returned verdicts in favor of Coastal and Barrow, awarding general and punitive damages to both plaintiffs and special damages to Coastal. Southern Bell appeals.

1. Appellant contends that the trial court erred in failing to give its requested charges on the limitation of liability clauses in the contract for purchase of the yellow pages advertisement and on the requirement that the plaintiffs show wilful, wanton or grossly negligent conduct by Southern Bell in order to recover.

a. As to appellee-Barrow, appellant's contentions are without merit. The contract with Southern Bell was executed in the name of Coastal Transmission Service, and signed by Richard Barrow, President. " '[W]here in the body or on the face of the instrument the agency is distinctly specified and the principal indicated, and the contract is substantially in the name of such principal, the latter, and not the agent, will be regarded as the maker of the instrument.' " *Radio Station WTMP v. Zior,* 102 Ga. App. 38-39 (115 SE2d 627) (1960). Barrow did not purport to bind himself individually on the contract but executed the document only in his representative capacity as president. Therefore, Barrow as an individual is not bound by the contract or by the limitation of liability clause therein.

As to Barrow individually, the trial court did not err in failing to charge that Barrow was required to show wilful or wanton conduct or gross negligence on the part of appellant in order to recover.

b. As to appellee — Coastal, however, we hold differently. The limitation of liability clause at issue states: "THE TELEPHONE COMPANY'S LIABILITY ON ACCOUNT OF ERRORS IN OR OMISSIONS OF SUCH ADVERTISING SHALL IN NO EVENT EXCEED THE AMOUNT OF CHARGES FOR THE ADVERTISING WHICH WAS OMITTED OR IN WHICH THE ERROR OCCURRED . . . AND SUCH LIABILITY SHALL BE DISCHARGED BY ABATEMENT OF THE CHARGES FOR THE PARTICULAR LISTING OR ADVERTISEMENT IN WHICH THE OMISSION OR ERROR OCCURRED." The publication of the offensive phrase, "get it in rear," was obviously caused by substitution of the letter "r" for the letter "g" in the word "gear."

In *Southern Bell v. C & S Realty Co.,* 141 Ga. App. 216, 221 (233 SE2d 9) (1977), overruled on other grounds *Ga.-Carolina Brick &c. Co. v. Brown,* 153 Ga. App. 747, 752 (266 SE2d 531) (1980), we said: "Since publication of the yellow pages is apart from Southern Bell's public service it may relieve itself by valid contract from liability for ordinary negligence, and such an agreement is not void as against public policy. See *Seaboard C.L.R. Co. v. Freight Delivery Service,* 133 Ga. App. 92, 93 (1) (210 SE2d 42) (1974) and cits.; Neering v. Southern Bell Tel. & Tel. Co., 169 FSupp. 133 (S. D. Fla. 1958), where summary judgment was granted to Southern Bell on the basis of the same contract clause involved here. . . ." In *Tucker v. Southern Bell Tel. &c. Co.,* 149 Ga. App 2, 3 (253 SE2d 390) (1979) we again recognized the validity of an exculpatory provision in a contract for advertisement in the yellow pages. In *Tucker* we said: "Tucker concedes that in view of the exculpatory contractual provision he must show wilful or wanton conduct or conduct so charged with indifference to the consequences as to justify the jury finding a wantonness equivalent in spirit to actual intent to injure him in order for him to recover from Southern Bell in this case." *Tucker,* supra at 3. Gross negligence may likewise be shown to overcome the barrier presented by the exculpatory contractual provision. See *Tucker,* supra at 4; *C & S Realty Co.,* supra at 221 (1 d)-222.

A claim for relief in a libel action can be based upon negligence. See *Retail Credit v. Russell,* 234 Ga. 765, 770 (218 SE2d 54) (1975). There is no reason, logically nor from a public policy point of view, to distinguish, for purposes of applying a limitation of liability clause in an advertising contract, between a cause of action based upon a negligent error or omission which results in loss of business and a cause of action based upon a negligent error or omission which results in an alleged libelous statement. Since we have held in *C & S Realty Co.,* supra, that the limitation of liability is protection against

ordinary negligence and since we have likewise held in the same case that the limitation of liability is not against public policy, we reverse for failure to charge on the effect of the exculpatory clause and the necessity of a finding of wanton or wilful conduct or gross negligence. We here treat wilful or wanton conduct as a different standard than that of gross negligence (absence of slight diligence, see OCGA § 51-1-4 (Code Ann. § 105-203)) as it is well settled in this state that there is a distinction between the two. *Caskey v. Underwood,* 89 Ga. App. 418, 422 (79 SE2d 558) (1953). No magic appears in the word libel that would circumvent the limitation of liability. This is a tort which was allegedly caused by negligence. A claim for damages arising because of injury to a business' reputation and the loss of monetary value by reason of damage to business is not so different as to avoid the rule in *C & S Realty Co.,* supra, and *Tucker,* supra, where we sustained the use of the same limitation of liability. The claim here alleged arose directly out of the error and omission of the telephone company. Coastal and Southern Bell contracted to limit Southern Bell's liability for its omissions and errors. We cannot say that this incident was not within the contemplation of the parties. We must give intent to the words of the parties not the sweep of their imagination, nor what we think they might have contemplated when entering into an agreement.

The trial court erred in failing to charge on the limitation of liability clause and on the requirement that Coastal show wilful or wanton conduct or gross negligence on the part of appellant. Accordingly, appellant is entitled to a new trial as to Coastal.

2. Appellant contends that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict. Several grounds are raised.

a. Appellant contends that the published statement, "Get it in rear," is not libelous. As a general rule, the question of whether a particular publication is libelous is a question for the jury. *Davis v. Macon Tel. Pub. Co.,* 93 Ga. App. 633, 634 (92 SE2d 619) (1956). If its meaning is not ambiguous and can reasonably have but one interpretation, the question is one of law for the judge (*Ledger-Enquirer Co. v. Brown,* 214 Ga. 422, 424 (105 SE2d 229) (1958)), but "the trial judge, reading and construing the publication as a whole, may find that it is not defamatory, that it is defamatory, or that it is ambiguous and the question is one for a jury." *Ferguson v. Park Newspapers &c.,* 148 Ga. App. 848, 849 (253 SE2d 231) (1979). In the instant case the trial court submitted it to the jury for resolution. We find no fault with that decision as the question as to what effect would be produced upon the public by reading the words used by the publisher of an alleged libel, and the determination of

whether or not the tendency of the publication was to bring the plaintiff into hatred, contempt, or ridicule, is an issue of fact for the jury and not a matter of law to be determined by the court. *Horton v. Georgian Co.,* 175 Ga. 261 (2) (165 SE 443) (1932). See generally, *Pacific & Southern Co. v. Montgomery,* 233 Ga. 175, 180 (210 SE2d 714) (1974).

We do not agree with appellant's assertion that Barrow and Coastal could not both claim defamation by the advertisement. One publication can libel more than one party, and each party libeled may bring an action. See *Constitution Pub. Co. v. Leathers,* 48 Ga. App. 429 (1), 433 (172 SE 923) (1933). Whether this one publication libeled both the owner — whose name was prominently stated in the ad — and the commercial enterprise, is an issue for the jury. *Davis v. Macon Tel. Co.,* supra at 634 (3); *Southland Pub. Co. v. Sewell,* 111 Ga. App. 803, 807 (143 SE2d 428) (1965).

There was sufficient evidence of record to support the finding of the jury as to Barrow, and to have submitted the issue of libel to the jury as to Coastal.

b. Appellant contends that the award of punitive damages was unsupported by the evidence. The Georgia Codal standard for imposition of punitive damages in a libel case is that provided in Code Ann. § 105-2002 (OCGA § 51-12-5), which provides "[i]n every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." *Atlanta Journal Co. v. Doyal,* 82 Ga. App. 321, 332 (60 SE2d 802) (1950).

Our Supreme Court, in assessing the general rule as to punitive damages commented: "Our cases on punitive damages do not present clear guidelines to follow, and it would be simple to say that punitive liability in every case is a jury question. But in examining the cases approving punitive damage awards, we find there has been one or more clear acts supporting wilful or wanton conduct, malice, oppression, *conduct exemplifying conscious indifference to consequences* or a succession of tortious acts." (Emphasis supplied.) *General Refractories Co. v. Rogers,* 240 Ga. 228, 233-234 (239 SE2d 795) (1977). This court, in *Ga.-Carolina Brick,* supra at 749, held that an award of punitive damages required a tort accompanied by aggravating circumstances, either in the act, or the intention, evidenced by " 'wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a *conscious indifference to consequences.'* " (Emphasis supplied.)

The injury sued for in this case is not merely the error in printing

the defamatory matter but the subsequent distribution of the publication — particularly the continuation of distribution after the error had been brought to the attention of local and regional Southern Bell officials. The initial distribution was made on February 5, 1981 and the local and regional officials were notified by Barrow on February 6. One official would not discuss the matter with Barrow as he was leaving for a two-week seminar and would speak to him when he returned. Another Southern Bell official's comment was that Barrow would just have to live with the error for one year. When Barrow could not get Southern Bell officials to take any immediate action he told them he would hire a lawyer to get something done. He was advised not to waste his money — they had never lost a case. Thus, Southern Bell officials were fully informed of their error on February 6 and continued to distribute the directories through February 19 and took no action to restrict or diminish the effect of the possible libel created by their action.

Construing the evidence in favor of the verdict, as we are required to do on appeal (*Ga.-Carolina Brick,* supra at 749 (2a)), the jury was authorized to find that appellant, with full knowledge of its error, the falsity of the ad, and the propensity for damage to appellees, made a conscious decision to continue distribution of the false advertising with conscious indifference to the consequences that could befall appellees and without any attempt to minimize or diminish the possible adverse effect of its error. The standard of OCGA § 51-12-5 (Code Ann. § 105-2002) was satisfied.

Appellant argues that since the aggravating circumstances must relate to the tort sued on, any tort of libel present in the instant case was complete when the first directories were issued, and that appellees, therefore, may not rely upon appellant's continued distribution of the directories as an evidentiary basis for punitive damages. We do not agree.

Appellant cites no libel cases as authority for its contention and we believe that its argument overlooks certain tenets applicable to the law of libel. Publication is an integral part of the act constituting the basis for a cause of action for libel. See *Rives v. Atlanta Newspapers,* 220 Ga. 485, 488 (139 SE2d 395) (1964). Any act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication. 3 Restatement of the Law, Torts 2d § 577, p. 201. Publication entails the ability to control the libel, and this ability is retained until the moment of delivery. *Rives,* supra, citing *Giles v. State,* 6 Ga. 276, 282 (1848). The evidence in the instant case authorizes the finding that appellant knowingly exercised its control over the publication of the libel by allowing additional distribution of the yellow pages directories.

This conclusion does not conflict with the single publication rule relied on by appellant. The rule is "a device by which a widely circulated libel is litigated in one trial. . . ." to avoid "a multiplicity of suits and an almost endless tolling of the statute of limitations. . . ." *Carroll &c. Hosp. Auth. v. Cox Enterprises,* 243 Ga. 760 (256 SE2d 443) (1979). In *Carroll,* the Georgia Supreme Court refused to apply the single publication rule to restrict venue to the county in which the libel was first published, as this would "prevent a plaintiff from suing where the injury to his reputation may be the greatest." *Carroll,* supra at 762. "By its own action in *circulating* its newspaper in Carroll County, the respondent gave rise to a cause of action which originated in Carroll County for venue purposes." (Emphasis supplied.) Id. We believe that the logical extension of the premise underlying the holding in *Carroll* permits the plaintiffs/appellees in the instant case to rely upon appellant's own action in circulating the directories with knowledge of the libel to assert their claims for recovery of punitive damages.

Further support for our conclusion is found in 3 Restatement, Torts 2d, § 577A, pp. 210, 211, comment e: "In his single action [the plaintiff] may recover damages for the publication to all persons whom the communication has reached or may be expected to reach, whether before or after trial, *until its circulation has terminated* or the statute of limitations has run against the cause of action." (Emphasis supplied.)

The jury was authorized to award punitive damages to Barrow. Further, the evidence was sufficient to submit the question of punitive damages as to Coastal to the jury.

c. Appellant contends that the limitation of liability clause in the advertising contract and a limitation of liability statement contained in each issue of the yellow pages barred appellees' recovery absent a showing of gross negligence or wilful or wanton conduct. The latter disclaimer applies to "business subscribers" and states: "The Telephone Company assumes no responsibility or liability for errors or omissions occurring in the Yellow Pages. Errors or omissions will be corrected, in a subsequent issue. . . ."

This contention is without merit as to Barrow, since Coastal, not Barrow, was the "business subscriber" to the yellow pages advertisement. Further, as Barrow was not bound individually by the advertising contract with appellant (see Division 1a above), his right of recovery is unaffected by the limitation of liability clause in the contract.

As we have held in Division 1b above, Coastal is subject to the contractual limitation of liability and its right of recovery subject to a showing of wilful or wanton conduct or gross negligence on the

part of Southern Bell. As our discussion of the evidentiary basis for the award of punitive damages points out (see subdivision b above), there was sufficient evidence to submit the question of appellee's wilful or wanton or grossly negligent conduct to the jury as to Coastal.

At the conclusion of the trial, the trial court granted appellant's motion for directed verdict as to all issues of negligence. Inasmuch as we have granted a new trial to appellant against Coastal (see Division 1b above) and because that portion of the trial court's order is inconsistent with our opinion (see Division 1b above where we rule that gross negligence is an issue), we reverse so much of the order as pertains to the negligence issue. We issue this direction in the instant case so as to ensure a fair and full retrial.

3. Appellant contends that the jury's verdict was excessive. Since we hold in Division 1b above that appellant is entitled, on another ground, to a new trial as to Coastal, we discuss this enumeration only as it relates to Barrow.

The proper measure of damages in a libel action "is limited only by the enlightened conscience of impartial jurors. [Cits.]" *Atlanta Journal Co. v. Doyal,* supra at 331-332.

" ' "When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice or bias or corrupt means in reaching the verdict appear, we are not authorized to set it aside as being excessive. [Cits.]" ' [Cit.] ' "This court does not have the broad discretionary powers invested in trial courts to set aside verdicts, and where the trial court before whom the witnesses appeared had the opportunity of personally observing the witnesses, including the plaintiff on the stand, has approved the verdict, this court is without power to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means. [Cit.]" ' [Cit.]" *Melton v. Bow,* 145 Ga. App. 272, 274-275 (243 SE2d 590) (1978); affd. 241 Ga. 629 (247 SE2d 100) (1978), cert. denied, 439 U. S. 985 (1978).

Considering all of the circumstances of the case, and in the absence of any showing of prejudice or bias or corrupt means of reaching the verdict or any abuse of the trial court's discretion in refusing to overturn the verdict, we cannot say the verdict was excessive as a matter of law. Id.

The trial court did not err in denying appellant's motion for new trial on the ground that the jury verdict for actual damages was excessive.

4. Appellant contends that the trial court erred in admitting

into evidence a pamphlet containing the Automobile Service Counsel Code of Ethics, photographs of sports teams sponsored by plaintiffs, and certain testimony of the president of an advertising agency, and in permitting the jury to view a television commercial for Coastal.

Appellant contends that the pamphlet, the photographs, and the showing of the commercial should have been excluded as irrelevant. " 'The admission of evidence is a matter which rests largely within the sound discretion of the trial judge.' [Cit.] However, 'The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value,' Agnor's Georgia Evidence, § 10-2, p. 165. . . ." *Baker v. State,* 246 Ga. 317, 319 (271 SE2d 360) (1980). "Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. [Cit.]" *Lewis v. State,* 158 Ga. App. 586, 587 (281 SE2d 331) (1981).

Appellant contends that testimony of the president of an advertising agency on the impact of the yellow pages ad on the advertising campaign he conducted for Coastal should have been excluded for lack of foundation, lack of personal knowledge, and as hearsay. The trial court restricted the testimony to general community impact in response to appellant's hearsay objection. Based upon our review of the transcript, we find no merit in appellant's other contentions.

5. We have examined the remaining enumerations of error and determine either that they are without merit or that it is unnecessary for us to reach determinations of their merit based on our holdings above.

*Judgment affirmed in part; reversed in part with direction. Shulman, C. J., Deen, P. J., Banke, Birdsong and Carley, JJ., concur. Quillian, P. J., McMurray, P. J., and Pope, J., dissent.*

DECIDED JULY 14, 1983 —
REHEARING DENIED JULY 28, 1983 —

*Walter C. Hartridge, Leamon R. Holliday III,* for appellant.
*James E. McAleer, Jr., D. Ray Gaskin,* for appellees.

QUILLIAN, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. I cannot agree with that portion which holds that the limitation of liability clause in the contract between Southern Bell and Coastal Transmission was also applicable to the independent tort found by the jury in the misprinted ad.

The Supreme Court has stated the basic rule quite clearly. " 'It is axiomatic that a single act or course of conduct may constitute not

only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him.' " *Sheppard v. Yara Engineering Corp.,* 248 Ga. 147, 148 (281 SE2d 586); accord: *Tapley v. Youmans,* 95 Ga. App. 161 (1) (97 SE2d 365); *E.&M. Constr. Co. v. Bob,* 115 Ga. App. 127, 128 (153 SE2d 641); *Rawls Bros. Co. v. Paul,* 115 Ga. App. 731 (1) (155 SE2d 819); *Orkin Exterminating Co. v. Stevens,* 130 Ga. App. 363, 365 (203 SE2d 587); *Long v. Jim Letts Olds.,* 135 Ga. App. 293 (2) (217 SE2d 602); *Travelers Ins. Co. v. King,* 160 Ga. App. 473, 475 (287 SE2d 381). It cannot be argued that each of us is not under a duty — independent of any contractual obligation, not to libel another. Code Ann. § 105-701 (now OCGA § 51-5-1). Hence, Southern Bell is guilty of a breach of its contractual duty as well as the independent tort of libel. Thus, the crucial divisive factor between the majority and myself is whether the limitation of liability clause which applied to the contractual breach also applies to the independent tort of libel. I find that it does not.

Professor Prosser advises that "[c]ontract obligations are imposed because of conduct of the parties manifesting consent . . . But if A negligently runs B down with his automobile, a cause of action arises, not because of any promise to refrain from the commission of the act, but because the law imposes upon A a duty, owed to anyone in his path, to refrain from inflicting such injuries. The remedy in such a case is in tort." 4 Prosser, Law of Torts 613, § 92. In this case, Coastal Transmission never consented to be libeled nor can such be reasonably inferred from the limitation of liability clause in the contract and the misfeasance of the contract was also a tort of libel. Where one act of a defendant breached a contract with the plaintiff and also amounts to a tort, the plaintiff has his choice of action. *Rawls Bros. Co. v. Paul,* 115 Ga. App. 731, 733, supra; Prosser, Law of Torts 616, 617, § 92. Both Professors Corbin and Prosser agree that "[i]f the breach of contract is also a tort or involves the com-mission of a tort, *a provision limiting the liability in damages for the breach may not be operative as a limitation of the liability in tort."* (Emphasis supplied.) 5 Corbin on Contracts 389, § 1068; 4 Prosser, Law of Torts 619, § 92. Prosser bases his decision on the fact that "damages recoverable for breach of contract are limited to those within the contemplation of the defendant at the time the contract was made . . . They may be further limited by the contract itself, where *a tort action might avoid the limitation."* (Emphasis supplied.) Id. at 619.

The reasoning behind their opinion is basic contract law. What was the intent of the parties in the limitation of liability clause in the printing contract? What type of negligence was contemplated by the

parties? Was it only to cover errors in omission or mistakes in the name or address? Or, did both parties intend to include a release from damages for any libelous publication? The majority finds: "We cannot say that this incident was not within the contemplation of the parties." I disagree. I cannot construe the limitation of liability agreement to cover or control an event that neither party anticipated nor intended to be covered — libel and commercial defamation. I cannot envision a business person consenting in a contract to be libeled, and his business to be commercially defamed, for the simple consideration that the libelous publication would not cost him anything. This result is reached by the majority opinion. From the wording of the agreement, it is clear that the only subject matter covered or contemplated was an omission to publish or an error in the name, number, or address of the subscriber.

I find that a portion of the majority opinion supports the verdict for Coastal Transmission, i.e. "The injury sued for in this case is not merely the error in printing the defamatory matter but the subsequent distribution of the publication — particularly the continuation of distribution after the error had been brought to the attention of local and regional Southern Bell officials." They also stated: " . . . in view of the exculpatory contractual provision he must show wilful or wanton conduct or conduct so charged with indifference to the consequences as to justify the jury finding a wantonness equivalent in spirit to actual intent to injure him in order for him to recover from Southern Bell in this case." Thus, conceding the initial error was caused by a negligent striking of an "r" for the "g" in the word "gear," the error was compounded by the failure to proof the original composition. Further, the error was exacerbated by the negligent printing, and negligent proofing, of the finished printed yellow pages. However, there was no negligence in the continued distribution of the libelous ad in the yellow pages directory after Southern Bell officials were notified on February 5 of the libelous ad, and they continued distribution of the libel through February 19. There was two complete weeks of knowing, intentional, deliberate distribution of a libelous publication with conscious indifference to the consequences to the libeled individual and Coastal Transmission. Hence, under the authority cited by the majority, even if the exculpatory clause applied there is sufficient evidence of "wilful or wanton conduct so charged with indifference to the consequences as to justify . . ." a finding for Coastal Transmission. The indifference of Southern Bell was shown when one official would not talk to Barrow because he was leaving for a two week seminar and another said he would just have to live with it for one year — and then continued with two additional weeks of distribution.

In Georgia it is a recognized tenet of the law that the one who is injured by a breach of contract is bound to lessen his damages as far as practicable. Code Ann. § 20-1410 (now OCGA § 13-6-5). This rule also applies to torts. Restatement, Torts 2d § 918; see also 8 EGL 38, Damages, § 29. The plaintiff in the instant case did this by immediate notification of Southern Bell officials. If the party wronged is under an obligation to diminish damages, there is no just reason why the tortfeasor should not be under the same obligation to diminish damages caused by his wrongdoing. The majority opinion agrees. Restatement, Torts 2d, states: "One who intentionally and unreasonably fails to remove defamatory matter that he knows to be exhibited on land or chattels in his possession or under his control is subject to liability for its continued publication." Restatement, Torts 2d, § 577 (2) p. 201. And, "when, by measures not unduly difficult or onerous, he may easily remove the defamation, he may be found liable if he intentionally fails to remove it." Id. Comment on subsection (2) p. 208. In the instant case, Southern Bell officials were made aware of the libelous matter on February 5, and knowingly refused to mitigate damages already caused and which would be caused by continuing distribution. They wilfully chose to increase the damage already caused rather than delay distribution of the remainder of the directories for a few days while one or two persons could have obliterated the offensive matter with a rubber stamp. Such continued publication is a tort wholly apart from the original contract (Restatement, Torts 2d, § 577 (2)) and liability exists for such action — even if Southern Bell were not responsible for the original libel. Hellar v. Bianco, 111 Cal. App. 2d 424 (244 P2d 757); Tidmore v. Mills, 33 Ala. App. 243 (32 S2d 769); Restatement, Torts 2d, § 577 (2).

This court has held that "*where the breach* of contract *is not* also *a tort, limitations of liability* for breach *will usually be given effect.*" (Emphasis supplied.) *Orkin Exterminating Co. v. Stevens,* 130 Ga. App. 363, 365, supra. Accordingly, I agree with Professors Corbin and Prosser, and the *Orkin* decision, that limitation of liability clause in a contract is not operative as to a tort arising from the same contract which is a violation of an independent duty not to libel another — particularly when the tortfeasor has full knowledge of the libelous matter within his possession and continues distribution of the libel with conscious indifference to any damage it could cause to the person or corporate entity defamed. I would affirm the judgment.

I am authorized to state that Presiding Judge McMurray and Judge Pope concur in this dissent.