IRIS MELÉNDEZ VEGA, demandante y peticionaria, *v.* EL VOCERO DE PUERTO RICO, ETC., demandados y recurridos; PEDRO GOYCO AMADOR, JOSÉ A. SANTIAGO MARTÍNEZ, terceros demandados.

*Número:* CC-97-20          *Resuelto:* 24 de noviembre de 1997

*Maricarmen Ramos de Szendrey* y *José Julián Álvarez González*, abogados de la parte peticionaria; *Juan Marchand Quintero* y *Francisco Ortiz Santini*, de *Rivera Cestero & Marchand Quintero*, abogados de la parte recurrida.

PER CURIAM: En el caso de autos nos corresponde resolver si en una demanda por difamación se puede reclamar los daños causados por una *serie* de artículos como una sola causa de acción, o si es compulsorio individualizar los artículos de la serie, de manera que cada uno constituya una causa de acción separada.

## I

El 19 de junio de 1992 la peticionaria presentó una demanda por difamación contra *El Vocero de Puerto Rico, Inc.* (en adelante *El Vocero*), Caribbean International News Corp., Gaspar Roca, José A. Purcell, Martha Marrero de Ramos y la sociedad de gananciales integrada por ésta y su esposo. Alegó que desde el 5 de noviembre de 1991 el periódico *El Vocero* comenzó la publicación de una *serie* de artículos sobre ella que eran difamatorios. Según se desprende de la demanda, dicha serie de artículos versaba sobre un único tema principal: las imputaciones sobre acoso sexual hechas por Martha Marrero de Ramos contra la peticionaria.[1] Conforme a dichas imputaciones, la codemandada Marrero de Ramos supuestamente fue objeto de acoso sexual por parte de la demandante. Ésta era fiscal y ocupaba el puesto de Directora del Centro Metropolitano de Investigaciones y Denuncias (C.E.M.I.D.), mientras que Marrero de Ramos era su secretaria. El periódico le dio una amplia divulgación a las alegaciones de que dicha fiscal estaba acosando sexualmente a una subalterna. En la demanda se adujo no sólo que lo difundido en la serie de artículos era falso; sino, además, que *El Vocero* publicó la serie con grave menosprecio de si lo divulgado era cierto o no, y que agravó su falsedad mediante el uso de lenguaje subjetivo y parcializado. Se alegó también que lo publicado no tenía base alguna en datos que surgiesen de un procedimiento público.

A pesar de que para la fecha de la interposición de la demanda ya se habían publicado treinta y dos (32) artículos, en ésta, a modo de ejemplo de la serie, se mencionaron en particular sólo diecinueve (19) de ellos.[2] En la de-

---

[1] También se comentó en los artículos sobre unos intentos de encubrir estas imputaciones por parte de ciertos funcionarios gubernamentales.

[2] El 25 de febrero de 1994 se presentó una demanda enmendada en la que se incluyó un artículo adicional a los mencionados en la demanda original. El 13 de septiembre de 1995 se presentó una segunda demanda enmendada en la cual se incluyeron en el texto dos artículos adicionales. En ambas también se incluyó a los artículos mencionados en la demanda original.

manda se hacía referencia a los restantes trece (13) artículos de manera genérica, sin expresar sus fechas de publicación ni transcribir las expresiones contenidas en ellos que eran alegadamente libelosas. La demanda nunca fue enmendada para mencionar concretamente en ella los trece (13) artículos referidos ni los otros diez (10) artículos que fueron publicados con posterioridad a su presentación. Sin embargo, el extenso proceso de descubrimiento de prueba sí abarcó concretamente todos y cada uno de los artículos publicados, incluyendo los que no habían sido mencionados particularmente en la demanda inicial. Más de tres (3) años después de interpuesta la reclamación, en una conferencia con antelación al juicio, los demandados plantearon por primera vez, mediante una moción de desestimación, que las causas de acción por los artículos no mencionados concretamente en el texto de la demanda estaban prescritas.

El Tribunal de Primera Instancia acogió la solicitud de desestimación presentada y declaró prescrita la reclamación por veintitrés (23) de los artículos publicados. El Tribunal de Circuito de Apelaciones confirmó esta determinación. Ambos foros fundamentaron su decisión en la doctrina de la regla de la publicación única. De esta determinación la demandante acudió ante nos mediante un recurso de *certiorari*. El 1ro de febrero de 1997 emitimos una orden de mostrar causa y le dimos un término a los demandados para que comparecieran ante nos a mostrar causa por la cual no debíamos revocar el dictamen del foro apelativo. Luego de concederle una prórroga, dicha parte compareció, por lo que procedemos a emitir el auto solicitado, según lo intimado.

## II

De entrada, es importante señalar que del lenguaje de la demanda en cuestión se desprende claramente que lo que en ella se estaba reclamando era *una sola causa de*

*acción,* por los daños causados por la *serie* de artículos. Esto se constata de la lectura de varios de sus párrafos:

7. El día 5 de noviembre de 1991 el codemandado "El Vocero de Puerto Rico" comenzó la publicación de lo que luego se convirtió en una *colección de artículos* altamente difamatorios y profundamente lesivos a la reputación profesional y a la honra y dignidad de la demandante ...

11. Todas y cada una de esas actuaciones dañinas y culposas de los demandados antes mencionados, [...] *se repitieron frecuentemente* durante varios largos y angustiosos meses ...

En efecto, después de la publicación maliciosa de la información falsa y libelosa inicial del 5 de noviembre de 1991, los demandados sacaron a la demandante del relativo anonimato en que ésta se encontraba, la convirtieron en persona "famosa", *mantuvieron su reputación constantemente sobre el tapete público* hasta el día de hoy y luego osaron tildar todo este asunto, de su propia creación, "el escándalo del año" ...

12. *Entre las expresiones falsas y libelosas que hizo posteriormente la* señora Marrero de Ramos, *se encuentran las siguientes,* que fueron publicadas en la edición del periódico El Vocero bajo la autoría del codemandado señor Purcell en los días indicados: ...

13. Algunos de los titulares con contenido falso y libeloso o publicados con gran despliegue y conteni[en]do frases estereotipadas que *identificaban la larga serie de artículos,* son los siguientes, publicados en las fechas y páginas del periódico que también se indican: ...

14. Así mismo *se continuaron repitiendo* sinopsis introductorias falsas y difamatorias dentro del texto de los diversos artículos, tales como las siguientes: ...

15. El lenguaje poco sereno, poco profesional, crudo y sensacionalista utilizado por el codemandado José A. Purcell, *también se repitió en múltiples ocasiones, algunas de las cuales son las siguientes:* .... (Énfasis suplido.)

La peticionaria señala como primer error ante nos que las alegaciones en una demanda por difamación, como la de autos, no están sujetas a requisitos especiales de contenido que exijan la aseveración particular de la fecha y el contenido difamatorio literal de cada una de las publicaciones que constituyen la serie. Aduce, por lo tanto, como lo que se reclamaba eran los daños causados por la *serie,* no estaba obligada a incluir en la demanda la fecha y el texto literal de publicación de cada noticia.

Nos compete determinar, pues, si las alegaciones en la demanda aludida eran suficientemente eficaces, de modo que los artículos no mencionados particularmente en ésta no quedaban excluidos de la reclamación así formulada. Para ello es necesario revisar las normativas vigentes relativas a la figura de la prescripción y al contenido de las alegaciones de una demanda. Veamos.

## III

Respecto a la prescripción, reiteradamente hemos señalado que ésta sirve para salvaguardar al deudor de la inercia del acreedor de un derecho, mas no para castigar a un acreedor diligente. *Agosto v. Mun. de Río Grande*, 143 D.P.R. 174 (1997); *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560 (1995); *De Jesús v. Chardón*, 116 D.P.R. 238, 245–246 (1985). "La prescripción del derecho es lo excepcional al ser su ejercicio o conservación lo normal, por lo que el ordenamiento jurídico potencia el ejercicio y conservación de los derechos mediante la utilización de los medios interruptivos de la prescripción." *Galib Frangie v. El Vocero de P.R.*, supra, pág. 567. En *García Aponte et al. v. E.L.A. et al.*, 135 D.P.R. 137, 142–143 (1994), señalamos que:

> Sabido es que la prescripción extintiva es una norma de derecho sustantivo regida por las disposiciones del Código Civil de Puerto Rico y constituye una forma de extinción de los derechos, dada la inercia de la relación jurídica durante un periodo de tiempo determinado. El transcurso del periodo de tiempo establecido por ley, sin que el titular del derecho lo haya reclamado, da lugar a la presunción legal de abandono de éste, lo que junto a la exigencia de la seguridad jurídica, que en aras del interés general precisa dotar de firmeza las relaciones jurídicas—constituyen los fundamentos básicos de la prescripción extintiva. ...
>
> Ahora bien, siendo la prescripción un fenómeno basado en la inercia o inactividad del titular que nos permite presumir el abandono del derecho, si tal inactividad cesa, no operará la prescripción al faltar uno (1) de sus requisitos. La interrupción de la prescripción se fundamenta en la actividad o ruptura de aquella inercia. El acto interruptivo representa la manifesta-

ción inequívoca de una voluntad contraria al mantenimiento de la situación inerte manifestada ésta con anterioridad a que el plazo de deliberación se agote. (Énfasis suprimido.)

En el caso de autos, es evidente que la demandante fue diligente y demostró su interés en reclamar los daños supuestamente causados por *la serie* de artículos. La demanda se presentó el 19 de junio de 1992, *apenas siete meses después de la publicación del primer artículo*, y en ésta, a modo de ejemplo, se detallaron concretamente las expresiones alegadamente falsas no sólo de ese primer artículo sino de diecinueve (19) de ellos, incluyendo uno publicado el 21 de abril de 1992, *escasamente dos meses antes de presentarse la demanda*. Esta expedita reclamación demuestra que no hay aquí un problema de inercia por parte del reclamante. Además, si *El Vocero* consideraba insuficientes estas alegaciones, bien pudo haber solicitado en su contestación a la demanda que se especificara a qué actos negligentes se refería la reclamación, pero no lo hizo. *Agosto v. Mun. de Río Grande*, supra, págs. 177—178.

Réstanos auscultar, entonces, si la reclamación aludida fue lo suficientemente clara como para haber dado un aviso adecuado a los demandados de que aun los artículos no mencionados allí de manera particular formaban parte de la serie reclamada. Respecto al contenido de las alegaciones, el principio general es que éstas se hacen para "informar al demandado, de manera general, sobre la reclamación que contra él se incoa. Sólo es necesario bosquejar la controversia. No se exigen fórmulas técnicas para la redacción de las alegaciones". *Agosto v. Mun. de Río Grande*, supra, pág. 178. Véase *Ortiz Díaz v. R. & R. Motors Sales Corp.*, 131 D.P.R. 829, 835 (1992). En *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497, 505–506 (1994), se dijo:

... [E]n el procedimiento civil moderno se acepta que las alegaciones sólo tienen una misión: notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes. Para precisar con exactitud cuáles son las verdaderas cuestiones en

controversia y aclarar cuáles son los hechos que deberán probarse en el juicio, es imprescindible recurrir a los procedimientos para descubrir prueba.

Conforme a lo anterior, no cabe duda de que las alegaciones hechas en la demanda en cuestión eran suficientes para advertir a los demandados sobre lo que se les reclamaba. En ellas se informaba a los demandados que se estaba exigiendo una indemnización por los daños causados por la publicación de la serie de artículos, la cual era considerada libelosa por la demandante. Se hacía constar claramente que los textos que allí se citaban eran ejemplos, ilustraciones concretas del contenido de la colección de los artículos publicados.

## IV

La parte demandada sostiene que, a pesar de lo anterior, en los casos de reclamaciones por publicaciones era mandatorio incluir en la demanda la fecha y el contenido de toda publicación que se alega fue difamatoria.(3) Se basa para ello en la doctrina de la regla de la publicación única. Esta doctrina fue aplicada por vez primera en nuestro ordenamiento en *Díaz Segarra v. El Vocero*, 105 D.P.R. 850 (1977). En ese caso resolvimos que en un pleito por la publicación de una noticia alegadamente libelosa no se podía interponer una demanda por cada periódico que se imprimió, y que contenía la noticia. Según explicamos allí, "la

---

(3) La razón que aduce esta parte es que sólo así estaría en condiciones de defenderse de las alegaciones. Sin embargo, en la demanda se expresaba claramente que la reclamación era por la serie de artículos publicados por el periódico referentes a las imputaciones de hostigamiento sexual contra la demandante. No era oneroso para los demandados cotejar sus propios archivos y verificar cuáles eran todos los artículos en cuestión (entre la fecha del identificado en la demanda como el primero de la serie y la fecha de la presentación de la demanda, y cuáles artículos nuevos que trataban el mismo tema estaban siendo impresos con posterioridad a la presentación de la demanda). Además, no se puede perder de perspectiva que en el descubrimiento de prueba se abarcaron todos los artículos, lo que les simplificaba a los demandados, aun más, la cuestión referente a la preparación de la defensa de la reclamación.

edición completa del periódico, revista o libro se considera una sola publicación que da lugar en caso de libelo, a una sola causa de acción, quedando la extensión del agravio, la distribución y circulación como elementos valorativos de daños". *Íd.*, pág. 852. El propósito de esta regla es incluir en una sola demanda todos los daños resultantes de una única publicación. Véase, también, *Restatement of the Law (Second) of Torts* Sec. 577A (1977).

Posteriormente, en *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315, 331 (1994), clarificamos que la adopción en nuestra jurisdicción de la doctrina de la regla de la publicación única se hizo con un fin específico: rechazar la regla del *common law* de causa de acción múltiple, la cual reconoce una causa de acción por cada periódico vendido. Luego, volvimos a reiterar este dictamen en *Galib Frangie v. El Vocero de P.R.*, supra, págs. 575–576.

Los demandados nos piden que extendamos la doctrina aludida "bidireccionalmente", para que concluyamos que, ya que cada noticia constituye una sola causa de acción, no es posible reclamar una serie de noticias como una causa de acción. Como puede observarse de lo relatado antes, nada en nuestra jurisprudencia permite tal extensión de la regla de la publicación única. El propósito de esa regla nada tiene que ver con el asunto que nos concierne aquí. No se cuestiona en el caso de autos si la demandante hubiese podido reclamar cada noticia como causa de acción independiente, pues ésta nunca hizo tal reclamación, y no tenía obligación de hacerlo. Decidió demandar por una única causa de acción, al pedir indemnización, no por los daños de cada publicación aisladamente, sino por los efectos acumulativos de todas las publicaciones tomadas en conjunto. Esta causa de acción es evidentemente diferente a la de reclamar daños por cada artículo publicado, en cuyo caso cada uno de ellos constituiría una causa de acción separada.

Si con la demanda se hubiese pretendido presentar una causa de acción separada por cada artículo publicado, entonces podría existir un problema de prescripción con respecto a los artículos no mencionados concretamente en la demanda original. Pero tal no es el caso aquí. La acción ante nos es por los daños causados por el efecto cumulativo de la *serie* de artículos. No puede haber, pues, "prescripción" de alguno de esos artículos porque lo que puede prescribir es la causa de acción, no un elemento de ésta.

De esta única causa de acción fue que se le avisó a los demandados mediante la demanda. Dicho aviso fue adecuado, de manera que todos los artículos que componen la serie reclamada, y que fueron objeto de descubrimiento de prueba, siguen estando incluidos dentro de la reclamación ante el Tribunal de Primera Instancia y nada impide que en el juicio se pase prueba sobre ellos y sus efectos.

V

El caso de autos también debe tomarse en cuenta que, a pesar de que durante la etapa de descubrimiento de prueba la demandante reiteró varias veces su intención de no limitar su reclamación a las noticias textualmente relacionadas en la demanda, los demandados no demostraron objeción alguna a ello hasta la conferencia con antelación al juicio, tres años después de presentada la demanda, cuando por primera vez plantearon la defensa de prescripción.[4] Si bien al momento de contestar la demanda no hubiesen podido esgrimir tal defensa, pues no había transcurrido todavía un año desde la publicación de las noticias que no se mencionaron concretamente en la demanda inicial, ciertamente pudieron hacerlo una vez pasó dicho año, pero no lo hicieron. A pesar de lo ventilado

[4] El 11 de diciembre de 1995 *El Vocero* presentó la contestación a la segunda demanda enmendada (la demanda enmendada había sido presentada por la demandante casi un año antes), en la cual por vez primera hizo alegación de prescripción.

en el descubrimiento de prueba, los demandados no presentaron expeditamente la defensa de prescripción.

Como se sabe, la prescripción es una defensa afirmativa. Por ello, no se debe esperar por años, luego de que se ha entablado un procedimiento judicial, para posteriormente sorprender con ella a todos, una vez se acerque la fecha de la vista del caso. Regla 6.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Ramos v. Trans Oceanic Ins. Co.*, 103 D.P.R. 298, 300 (1975). Una defensa afirmativa que no es presentada a tiempo se considera renunciada, salvo que se demuestre que no se le omitió por falta de diligencia, no siendo esto último lo usual. *Texaco P.R., Inc. v. Díaz*, 105 D.P.R. 248, 250 (1976); *Epifanio Vidal, Inc. v. Suro*, 103 D.P.R. 793, 794–795 (1975). Si la parte demandada entendía que la prescripción se consumó luego de contestarse la demanda, debió haberlo señalado con premura, en la primera oportunidad que tuvo para plantearlo, sin esperar a que se agotara el descubrimiento de prueba. *Epifanio Vidal, Inc. v. Suro*, supra, pág. 795.

En el caso de autos, los demandados participaron activamente en el descubrimiento de prueba que abarcó cada artículo de la serie.([5]) Tuvieron múltiples oportunidades para plantear su alegación de prescripción y, sin embargo esperaron hasta la conferencia con antelación al juicio para alegar por vez primera tal defensa afirmativa. A pesar de ello, comparecen ante nos para solicitar que se les proteja de una reclamación que conocían, amparando su petición en el transcurso de la prescripción, que no solo nunca ocurrió, sino que la plantearon tardíamente. No son merece-

---

([5]) En varias ocasiones durante esta etapa el periódico tuvo conocimiento de que la reclamación incluía artículos no transcritos en la demanda. Cada uno de los artículos fue cubierto por lo menos en una ocasión. Ello surge claramente del desglose de estas reclamaciones hecho por el Tribunal de Circuito de Apelaciones. En algunas ocasiones fue la parte demandante la que promovió el descubrimiento. Dos veces (28 de abril de 1994 y 3 de mayo de 1995) la demandante le notificó a los demandados acerca de los recursos presentados ante este Tribunal (en una controversia sobre el alcance del descubrimiento de prueba), en cuyos apéndices se incluía copia de cada artículo.

dores de tal protección, pues no han demostrado la existencia de alguna circunstancia que nos convenza de que su silencio no se debió a su propia falta de diligencia.

## VI

Por los fundamentos antes expuestos, *se expedirá el auto y se dictará sentencia para revocar la del Tribunal de Circuito de Apelaciones que había declarado prescritos los artículos publicados los días: 19 de noviembre de 1991, 21 de noviembre de 1991, 3 de diciembre de 1991, 6 de diciembre de 1991, 11 de febrero de 1992, 6 de marzo de 1992, 23 de marzo de 1992, 7 de abril de 1992, 8 de abril de 1992, 21 de abril de 1992, 6 de mayo de 1992, 19 de mayo de 1992, 9 de junio de 1992, 17 de junio de 1992, 1ro de agosto de 1992, 15 de septiembre de 1992, 25 de enero de 1993, 30 de marzo de 1993, 29 de julio de 1993, 14 de agosto de 1993, 23 de agosto de 1993, 1ro de septiembre de 1993 y 29 de septiembre de 1993.*

El Juez Asociado Señor Negrón García concurrió con el resultado e hizo constar que:

Aunque nuestra jurisprudencia establezca que cada publicación constituye una causa de acción separada, irrespectivamente de si fueron individuales, en serie continuada o incontinuada, *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560 (1995), nada impide a un reclamante *formular su reclamación y fundirla en una sola causa de acción.* Esa es la situación de autos.

Permitir una demanda contra un periódico por una serie de artículos, sin especificar cada uno, no es más oneroso que validar múltiples causas de acciones por cada uno de los artículos. *No hay menoscabo alguno a la libertad de prensa.*

Desde la primera demanda, a través del descubrimiento de prueba, *El Vocero* tuvo suficiente notificación para defenderse adecuadamente.

El Juez Asociado Señor Corrada Del. Río disintió con una opinión escrita. El Juez Asociado Señor Rebollo López no intervino.

— O —

Opinión disidente emitida por el Juez Asociado Señor Corrada Del Río.

Disentimos por entender que una parte demandante en una acción por difamación está requerida de identificar en la demanda cada uno de los artículos publicados, ya que cada uno de éstos constituye una causa de acción individual. Por eso somos del criterio de que las causas de acción que dimanan de los artículos no identificados en la demanda de la peticionaria están prescritas, y que la defensa de prescripción de ellas no fue renunciada por las partes recurridas, dada la fecha en que éstas advinieron al conocimiento de que la parte demandante peticionaria pretendía reclamar tales publicaciones como causas de acción en su contra.

I

La peticionaria, una fiscal que se desempeñaba como Directora del Centro Metropolitano de Investigaciones y Denuncias (C.E.M.I.D.), instó una demanda contra *El Vocero de Puerto Rico, Inc.* (en adelante *El Vocero*), Caribbean International News Corp., el Sr. Gaspar Roca, el Sr. José A. Purcell, la Sra. Martha Marrero de Ramos y la sociedad de gananciales de la cual ésta última es miembro. En la demanda de 19 de junio de 1992 se alegó que, comenzando el 5 de noviembre de 1991, el periódico *El Vocero* imprimió en sus ejemplares una serie de artículos que difamaron a la peticionaria. Se alegó que en éstos se publicó que la Sra. Martha Marrero, quien era secretaria de la peticionaria, la había acusado de hostigarla sexualmente. La demanda calificó los artículos como falsos; arguyó que éstos habían sido deliberadamente redactados con lenguaje parcializado, y sostuvo que el periódico demandado los había publicado en grave menosprecio a la verdad.

Para la fecha de presentación de la demanda, ya *El Vocero* había publicado treinta y dos (32) artículos relacionados a este asunto; sin embargo, la reclamación aludida sólo hizo referencia a diecinueve (19) de éstos. La demanda hace mención somera de los otros artículos, sin señalar sus fechas ni explicar, ni siquiera de la manera más general, sus fundamentos para argüir que ellos constituían publicaciones difamatorias. La demanda nunca fue enmendada para hacer referencia concreta a estos trece (13) artículos, ni a otros diez (10) que fueron publicados por ese periódico en fechas posteriores a la fecha de presentación de la demanda.(¹)

La tramitación del caso ante el tribunal de instancia conllevó un extenso descubrimiento de prueba en el que surgieron un número total de cuarenta y dos (42) artículos publicados. Tres (3) años después de la presentación de la demanda inicial, el 12 de diciembre de 1995, los demandados, aquí recurridos, presentaron una moción de desestimación. En dicha moción se arguyó que las causas de acción originadas por las publicaciones no mencionadas en la demanda inicial ni en sus versiones enmendadas estaban prescritas por no haber sido presentadas durante el término prescriptivo aplicable de un (1) año, según lo dispuesto por el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298.

El Tribunal de Primera Instancia desestimó veintitrés (23) de las causas de acción, las cuales corresponden a los artículos no identificados específicamente en la demanda. Mediante un recurso de *certiorari* presentado el 19 de julio de 1996, la parte peticionaria presentó la controversia al Tribunal de Circuito de Apelaciones, Circuito Regional de

---

(¹) El 25 de febrero de 1994 la peticionaria presentó una versión enmendada de su demanda en la que hizo referencia a los artículos identificados en la primera; allí también se aludió a una causa de acción emergente de un artículo adicional. La peticionaria enmendó la demanda una segunda vez, el 13 de septiembre de 1995; en esa versión se incluyeron los artículos de la primera demanda, más otros dos (2) artículos.

San Juan, el cual emitió una resolución confirmatoria el 22 de octubre de 1996. Dicha resolución fue notificada el 7 de noviembre del mismo año.

Inconforme, la peticionaria acudió a este Tribunal mediante una petición de *certiorari* presentada el 15 de enero de 1997. El recurso planteó los señalamientos de error siguientes:

> A. LAS ALEGACIONES EN UNA DEMANDA POR DIFAMACIÓN NO ESTÁN SUJETAS A REQUISITOS ESPECIALES DE CONTENIDO QUE EXIJAN LA ASEVERACIÓN PARTICULAR DE LA FECHA Y EL CONTENIDO DIFAMATORIO LITERAL DE CADA UNA DE LAS PUBLICACIONES QUE LA ORIGINAN. EN CONSECUENCIA, LAS CAUSAS DE ACCIÓN SURGIDAS DE TODOS LOS ARTÍCULOS A QUE SE HIZO REFERENCIA GENERAL FUERON EJERCIDAS OPORTUNAMENTE Y NO ESTÁN PRESCRITAS.
>
> B. AUN CUANDO HUBIESE REQUISITOS ESPECIALES PROCESALES DE CONTENIDO APLICABLES A LAS ALEGACIONES POR DIFAMACIÓN, EL REMEDIO PARA SUBSANAR CUALQUIER DEFICIENCIA GRAMÁTICO-PROCESAL ES ORDENAR LA ENMIENDA O SUPLEMENTACIÓN DE LAS ALEGACIONES. BAJO CUALQUIERA DE DICHOS REMEDIOS LO ALEGADO SE RETROTRAE A LA FECHA DE RADICACIÓN DE LA DEMANDA ORIGINAL Y NO ESTÁ PRESCRITO.
>
> C. AUN CUANDO LAS ALEGACIONES DE LA PETICIONARIA ADOLECIERAN DE UNA DEFICIENCIA GRAMÁTICO-PROCESAL INSUBSANABLE QUE ACARREA LA PRESCRIPCIÓN DE 23 DE LAS CAUSAS DE ACCIÓN, LA PRENSA HABÍA RENUNCIADO A ESA DEFENSA AL NO PRESENTARLA OPORTUNAMENTE. PETICIÓN DE *CERTIORARI*, PÁG. 11.

## II

Atendemos conjuntamente los primeros dos (2) errores señalados por entender que versan sobre la misma controversia. Estos errores proceden de la teoría de que no se requiere que una demanda por difamación identifique con particularidad la fecha ni el contenido específico de cada publicación alegadamente difamatoria. Acogiendo el

argumento de la peticionaria, la mayoría se expresa de la manera siguiente:

> Si con la demanda se hubiese pretendido presentar una causa de acción separada por cada artículo publicado, entonces podría existir un problema de prescripción respecto a los artículos no mencionados concretamente en la demanda original. Pero tal no es el caso aquí. La acción ante nos es por los daños causados por el efecto cumulativo de la *serie* de artículos. No puede haber, pues, "prescripción" de alguno de esos artículos porque lo que puede prescribir es la causa de acción, no un elemento de ésta.
>
> De esta única causa de acción fue que se le avisó a los demandados mediante la demanda. Dicho aviso fue adecuado, de manera que todos los artículos que componen la serie reclamada, y que fueron objeto de descubrimiento de prueba, siguen estando incluidos dentro de la reclamación ante el Tribunal de Primera Instancia y nada impide que en el juicio se pase prueba sobre ellos y sus efectos. (Énfasis en el original.) Opinión mayoritaria, pág. 398.

La mayoría también entiende que no era oneroso para el periódico tener que defenderse de una "serie de artículos" y le impondría a los demandados en acciones de libelo la obligación de "cotejar sus propios archivos y verificar cuales eran todos los artículos en cuestión". En fin, al mencionar que la demanda versaba sobre una serie de artículos, la mayoría sostiene que no existía una obligación sobre la peticionaria de incluir la fecha ni el texto particular de cada publicación.

No obstante, la mayoría hace caso omiso a que una reclamación por difamación emerge de la publicación particular, por lo que interpretar que la señalada "serie" equivale a una notificación debida no persuade. La mayoría entiende que la intención del demandante es el factor decisivo en la determinación de que su causa de acción fue debidamente notificada. Eso es incorrecto. El factor determinante depende de si la causa de acción notificada en la demanda constituye una notificación razonable de lo que se le imputa al demandado para permitirle a éste decidir los pasos que habría de tomar en su defensa.

La opinión de la mayoría resuelve que el texto de la demanda debe ser interpretado como que en ella se reclamaba "una sola causa de acción por los daños causados por la serie de artículos". Reconocemos que la demanda fue redactada de esa manera, pero entendemos que ese lenguaje no cumple con el nivel de notificación con el que se debe formular una imputación de difamación. La determinación de cuán específica debe ser la información que debe ser suministrada por un demandante contra quien alegadamente le difamó, nos lleva a la síntesis de la controversia que nos ocupa. Veamos.

Sabido es que una parte que persigue un remedio está requerida de presentar en su demanda sólo una alegación general. No obstante, también es axiomático que la demanda debe contener un grado suficiente de información sobre las imputaciones, que le permita a la parte demandada entender la sustancia de lo que deberá defenderse. Examinemos cómo estas reglas de derecho influyen sobre el caso de autos.

Las alegaciones de una demanda tienen la función de "informar al demandado, de manera general, sobre la reclamación que contra él se incoa". *Agosto v. Mun. de Río Grande*, 143 D.P.R. 174, 178 (1997), En la exposición de las causas de acción "[s]ólo es necesario bosquejar la controversia. No se exigen fórmulas técnicas para la redacción de las alegaciones". *Íd.* Véase, también, *Ortiz Díaz v. R. & R. Motors Sales Corp.*, 131 D.P.R. 829, 835 (1992). Al respecto, la Regla 6.1 de Procedimiento Civil expone lo siguiente:

*6.1 Solicitud de Remedio*

Una alegación que exponga una solicitud de remedio, ya sea una demanda, reconvención, demanda contra coparte, o demanda contra tercero, contendrá (1) una relación sucinta y sencilla de la reclamación *demostrativa* de que el peticionario tiene derecho a un remedio; y 2) una solicitud del remedio a que crea tener derecho. Se podrán solicitar remedios alternativos o de diversa naturaleza. (Énfasis suplido.) 32 L.P.R.A. Ap. III.

Expresamos en *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497, 505–506 (1994), que:

> ... [E]n el procedimiento civil moderno se acepta que las alegaciones sólo tienen una misión: notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes. Para precisar con exactitud cuáles son las verdaderas cuestiones en controversia y aclarar cuáles son los hechos que deberán probarse en el juicio, es imprescindible recurrir a los procedimientos para descubrir prueba.

La Regla 61 de Procedimiento Civil, 32 L.P.R.A. Ap. III, requiere que la alegación sea "demostrativa". En *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, expresamos que la alegación debe identificar la reclamación. Ahora bien, se ha establecido que la demanda no tiene que ser explícita en sus detalles sobre cada causa de acción.[2] Tal vez dirigidos por ese postulado, la mayoría sostiene que mencionar una serie de artículos constituye debida notificación a los demandados de que tendrían que defenderse de todos los artículos así clasificados en la mente de la peticionaria como una serie, pero no identificados de esa manera a las partes contrarias. Respetuosamente, entendemos que la mayoría confunde la notificación de la causa de acción con la notificación *sobre* la causa de acción.

Según lo expuesto concluimos que, una vez se identifica debidamente una causa de acción, no se requiere que el querellante desarrolle los fundamentos de los méritos de esa causa. Aunque no se requiere un alto nivel de especificidad sobre los méritos de la causa de acción, ésta tiene que ser identificada debidamente. De lo contrario, la parte en la defensiva tendría que adivinar las causas que serán litigadas en su contra.

Ahora bien, en el campo de los daños y perjuicios ocasionados por difamación, cada publicación constituye una

---

[2] En *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763 (1983), este Tribunal dispuso que no procede la desestimación definitiva de una demanda por dejar exponer en ésta hechos que justifiquen la concesión de un remedio, si dicha demanda es susceptible de ser enmendada.

causa de acción independiente. Cada artículo que haya formado parte de la "serie" es, por sí sólo, una causa de acción. Al respecto establecimos en *Díaz Segarra v. El Vocero*, 105 D.P.R. 850, 852 (1977), la vigente "regla de publicación única", la cual establece que:

> ... [L]a edición completa del periódico, revista o libro se considera una sola publicación que da lugar en caso de libelo, a una sola causa de acción, quedando la extensión del agravio, la distribución y circulación como elementos valorativos de daños.

En *Díaz Segarra v. El Vocero*, supra, pág. 852, explicamos que esta regla distingue nuestra jurisdicción de las estatales en el respecto de que, a diferencia de lo tradicionalmente reconocido en el *common law*, en Puerto Rico no existe "razón de pedir remedio por cada ejemplar del periódico vendido o entregado". De esta manera nuestro sistema de derecho agrupa a todos los ejemplares en que se publicó un artículo alegadamente difamatorio dentro de una misma causa de acción legal. La "regla de publicación única" fue adoptada para proteger la dignidad humana y el derecho a la intimidad de ataques abusivos, sin llegar a menoscabar la libertad de prensa. Íd.

Expandimos la definición de la "regla de publicación única" en *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315, 331 (1994), cuando allí señalamos:

> La regla de la publicación única la adoptamos en *Díaz Segarra v. El Vocero*, 105 D.P.R. 850 (1977), con un propósito específico. Allí expresamos que rechazábamos la regla del *common law* de causa de acción múltiple, que reconoce una razón de pedir remedio por cada ejemplar de un periódico vendido o entregado que contuviera una imputación libelosa, debido a que consideramos que la protección de la dignidad contra ataques abusivos y el derecho a la intimidad son factibles sin acudir a remedios que puedan resultar en mengua y erosión de la libertad de prensa. Íd., págs. 851–852. Sin embargo, la adopción de esta regla no puede extenderse de forma tal que menoscabe otros derechos reconocidos por nuestro ordenamiento. Véase, también, *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560 (1995).

Por un lado, como este tribunal ha resuelto, cada publicación constituye una causa de acción. Por el otro, el concepto de que cada publicación constituye una causa requiere que la parte reclamante identifique cada publicación mediante la exposición característica que la distinga, ya sea mediante el señalamiento de su fecha de publicación o por otras medidas. El alcance de la doctrina, según este Tribunal ha dispuesto, debería hoy llevarlo a denegar que una parte demandante pueda listar específicamente unos artículos en su demanda para luego intentar incluir otras causas de acción no especificadas más allá de su referencia a la frase "serie de artículos". Es preferible, en este tipo de litigio, una regla de derecho que exija una especificación particular de cada publicación que constituye una causa de acción. Con ese propósito, para que sea eficaz en cumplir con los requisitos del debido proceso de ley que protegen a los demandados, una demanda por difamación como la de autos debe contener, por lo menos, la fecha de cada artículo, aunque el recuento específico del lenguaje alegadamente difamatorio de cada uno de éstos puede surgir durante el descubrimiento. De otra manera, la parte demandada no sabría sobre qué debe indagar en el proceso de descubrimiento de prueba y la materia sobre la cual deberá defenderse. Ante estas consideraciones, la referencia críptica en la demanda a una "serie de artículos" no constituye una advertencia suficientemente clara a los demandados de que se les imputaba difamación por todos los artículos alusivos a la demandante, o en que consistía la difamación en cada uno de éstos.

Conscientes de que cada publicación constituye una causa de acción independiente, la cual debe ser identificada en la demanda o alegación, la referencia en la demanda instada por la peticionaria a una "serie" de artículos no interrumpió el término prescriptivo.[3] Resolvimos

---

[3] Nótese que la peticionaria nunca enmendó su demanda, una tercera vez, para elevar a causas de acción los artículos que actualmente quedaron prescritos.

en *García Aponte et al. v. E.L.A. et al.*, 135 D.P.R. 137, 12 (1994), que:

> ... [L]a prescripción extintiva es una norma de derecho sustantivo regida por las disposiciones del Código Civil de Puerto Rico y constituye una forma de extinción de los derechos, dada la inercia de la relación jurídica durante un periodo de tiempo determinado. El transcurso del periodo de tiempo establecido por ley, sin que el titular del derecho lo haya reclamado, da lugar a la presunción legal de abandono de éste lo que junto a . la exigencia de la seguridad jurídica —que en aras del interés general precisa dotar de firmeza las relaciones jurídicas— constituyen los fundamentos básicos de la prescripción extintiva.

En esa ocasión expresamos, además, que:

> ... [P]or ser la prescripción un fenómeno fundamentado en la inercia o inactividad del titular que nos permite presumir el abandono del derecho, si tal inactividad cesa, no opera la prescripción al faltar uno (1) de sus requisitos. La interrupción de la prescripción se fundamenta en la actividad o ruptura de aquella inercia. El acto interruptivo representa *la manifestación in-*

---

Al respecto dispone la Regla 13.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III:
*"REGLA 13. ALEGACIONES ENMENDADAS Y SUPLEMENTARIAS*
*"13.1. Enmiendas*

"Cualquier parte podrá enmendar sus alegaciones una vez en cualquier momento antes de habérsele notificado una alegación respondiente, o si su alegación es de las que no admiten alegación respondiente y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso las partes podrán enmendar su alegación únicamente con permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le restare para contestar la alegación original o dentro de veinte (20) días de notificársele la alegación enmendada, cualquiera de estos plazos que fuere más largo, a menos que el tribunal de otro modo lo ordenare."

*También es relevante lo que dispone* la Regla 13.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III:
*"13.3.   Retroactividad de las enmiendas*

"Siempre que la reclamación o defensa expuesta en la alegación enmendada surgiere de la conducta, acto, omisión o evento expuesto de la alegación original, las enmiendas se retrotraerán a la fecha de la alegación original. Una enmienda para sustituir la parte contra la cual se reclama se retrotraerá a la fecha de la alegación original si, en adición a cumplirse con el requisito anterior, la parte que se trae mediante enmienda (1) tuvo conocimiento de la causa de acción pendiente, de tal suerte que no resulta impedido de defenderse en los méritos, y (2) de no haber sido por un error en cuanto a la identidad del verdadero responsable, la acción se hubiera instituido originalmente en su contra."

*equívoca de una voluntad contraria al mantenimiento de la situación inerte manifestada ésta con anterioridad a que el plazo de deliberación se agote.* (Énfasis suplido.) *García Aponte et al. v. E.L.A. et al.*, supra, pág. 143.

A ese respecto, dispusimos en *Galib Frangie v. El Vocero de P.R.*, supra, pág. 567, que:

... [l]a prescripción del derecho es lo excepcional al ser su ejercicio o conservación lo normal, por lo que el ordenamiento jurídico potencia el ejercicio y la conservación de los derechos mediante la utilización de los medios interruptivos de la prescripción. (Escolio omitido.)

Aplicando la doctrina esbozada al caso de autos, ya que cada artículo constituye una causa de acción que debe ser identificada adecuadamente por la parte demandante, la alusión de la peticionaria a una serie de artículos no tuvo un efecto interruptivo en cuanto a la prescripción de éstos como causas de acción.

Por las razones expuestas, acogeríamos el argumento de los recurridos de que la doctrina de única publicación tiene una aplicación "bidireccional" sobre el proceso de comenzar una acción. Correspondientemente, entendemos que las causas de acción no identificadas de forma razonable en las demandas han prescrito. Este criterio queda confirmado por la jurisprudencia estadounidense que se ha expresado sobre esta controversia.[4] Nos persuade en particular lo resuelto por la Corte Superior del estado de Nueva Jersey en *Miele v. Rosenblum*, 603 A.2d 43 (1991). En ese caso el demandante instó una acción de difamación el 24 de junio de 1988 contra el editor de un periódico comunitario. La demanda señalaba sólo dos (2) publicaciones: la de 31 de

---

[4] La regla de publicación única fue adoptada originalmente para distinguir la doctrina vigente en nuestra jurisdicción de la utilizada por el *common law*, en cuanto a que no es la cantidad de ejemplares sino el hecho de su publicación la que constituye una causa de acción. No obstante, entendemos que no debemos menospreciar la experiencia que pueden ofrecer esas jurisdicciones sobre qué tipo de información debe ofrecerse a la parte demandada, en una acción de difamación, sobre las imputaciones instadas en su contra.

mayo de 1988 y la de 11 de junio de 1988. La demanda fue enmendada el 4 de abril de 1989 para incluir una causa de acción de que el demandado había actuado maliciosamente y había continuado publicando materiales difamatorios. Esa segunda versión de la demanda carecía de señalamientos sobre otras fechas de publicación, haciendo referencia sólo a las dos (2) aludidas. El tribunal de instancia correspondiente encontró que una alegación general sobre las publicaciones posteriores, hecha en la demanda enmendada, no está sujeta al término prescriptivo, ya que la demanda enmendada hacía referencia a que el demandado había continuado publicando cierto material difamatorio. Íd., pág. 45. El tribunal apelativo revocó ese dictamen, expresándose al respecto de la manera siguiente:

> The record indicates that there were other articles which plaintiff wished include (sic) in the litigation. ... [T]hose articles were never pleaded and, respecting a majority of them, the statute of limitations had passed at the time of the May 1991 summary judgement motion hearing. *Miele v. Rosenblum*, supra, págs. 44–45.

En su resolución de la controversia, ese tribunal apelativo persuasivamente adoptó la norma de derecho siguiente:

> We are satisfied that plaintiff's complaint for libel, having failed to specify any but the first two articles, limited plaintiff's cause of action to them, and rendered any future complaint subject to the relevant statute of limitations. *Miele v. Rosenblum*, supra, pág. 46.

Convencidos de nuestra posición, y habiéndola confirmado con la experiencia de otras jurisdicciones, nos preocupa el precedente que hoy establece la mayoría. Es consternante que una parte demandante en una acción por difamación cuente con la capacidad de someter a la parte demandada a una cascada de causas de acción sin tener que identificarlas debidamente. Nos preocupa el efecto que

esto pueda tener sobre la libertad de prensa, en casos como el de instancia, que involucran figuras públicas.(5)

---

(5) En acciones por difamación y libelo, si el demandante es una figura privada, éste debe probar que las expresiones fueron hechas de manera negligente y si, por el contrario, se tratara de una figura pública o un funcionario público, el demandante deberá probar que las expresiones fueron producto de la malicia real del demandado. Véanse: *Padilla et al. v. WKAQ Radio*, 140 D.P.R. 178 (1996); *Oliveras v. Paniagua Diez*, 115 D.P.R. 257, 262 (1984); *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37, 61–62 (1988); *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992).

La determinación de si una persona es una "figura pública" es una cuestión de derecho. *Garib Bazain v. Clavell*, 135 D.P.R. 475 (1994); *Oliveras v. Paniagua Diez*, supra, págs. 269–270, y *García Cruz v. El Mundo*, 108 D.P.R. 174, 183 (1978). Hemos señalado los siguientes rasgos peculiares de la figura pública: "1) especial prominencia en los asuntos de la sociedad, 2) capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público y 3) participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas." *Garib Bazain v. Clavell*, supra, págs. 482–483, citando a *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 422 (1977). Al determinar si una persona es una figura privada o pública hemos considerado como "eje crítico" la importancia e interés público del asunto o controversia de que se trate. *Zequeira Blanco v. El Mundo, Inc.*, 106 D.P.R. 432 (1977). En *Pueblo v. Olivero Rodríguez*, 112 D.P.R. 369, 375 (1982), al utilizar el interés público involucrado como método evaluativo para decidir si el demandante cualificaba como figura pública o privada, expresamos:

"... [L]a noción de figura pública está estrechamente vinculada —por razón de la posición oficial, poder o envolvimiento en los asuntos públicos— a la adquisición de relieve, prominencia, fama o notoriedad especial o general en la comunidad que, como corolario, de modo significativo le permite de ordinario a una persona cierto acceso a los medios efectivos de comunicación para exponer, adelantar y debatir sus puntos de vista ante la opinión pública, y como resultado corre el riesgo de estar más expuesta al escrutinio, atención e interés público en contraste con un ciudadano privado."

Nótese, además, que la peticionaria se desempeñaba como fiscal durante el reportaje alegadamente difamatorio. Al respecto, la Corte Suprema federal en *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966), delineó los contornos del término "funcionario público" al resolver que:

"... It is clear ... that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." (Escolio omitido.)

Hemos rechazado que la libertad de prensa, protegida a su vez mediante el requisito de malicia real, solamente cobije la publicación de informaciones correctas; así como hemos resuelto que el propósito de la garantía constitucional es mantener un clima abierto para la discusión franca y vigorosa de los asuntos de interés público y de la conducta y ejecutoria de los funcionarios públicos, por lo que la libertad de prensa incluye tanto la manifestación veraz como la incorrecta. Véase *Garib Bazain v. Clavell*, supra, pág. 485, y casos allí citados. Véase, también, *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

III

Para fundamentar su parecer, la mayoría en su opinión entiende, además, que la peticionaria fue "diligente y demostró su interés en reclamar los daños supuestamente causados por *la serie* de artículos" (énfasis en el original) Opinión mayoritaria, pág. 395; que la peticionaria instó su reclamación sobre difamación de una manera tan expedita que no existe un problema de inercia en este caso, y que si *El Vocero* consideraba insuficientes las alegaciones de la demanda, esa parte contaba con la oportunidad de solicitarle a la parte demandante que especificara a cuáles actos negligentes se refería en su reclamación. La mayoría entiende que al el periódico no solicitar la adición de las diferentes causas de acción que habrían de ser imputadas en su contra, aceptó poder defenderse de todos los artículos publicados que la peticionaria entendía que le difamaron pero que nunca mencionó. Por los fundamentos discutidos, ese resultado nos parece ilógico e irrazonable.

Por otro lado, la mayoría refugia su argumento en que los artículos que no fueron presentados como causas de acción fueron de todas maneras identificados por los recurridos durante el descubrimiento de prueba. Se arguye en la opinión de la mayoría que sí fueron identificados en la demanda y sus versiones posteriores constituían sólo ejemplos indicativos del mensaje libeloso. Primero, debemos señalar que, luego de examinar detenidamente las demandas, somos del criterio que los artículos mencionados no eran ilustraciones, sino causas de acción debidamente formuladas. Segundo, manténgase en mente que la evidencia desarrollada durante un descubrimiento de prueba no constituye una causa de acción hasta que ésta no sea presentada como una alegación en la cual se persiga un remedio, según lo dispuesto por la Regla 5.1 de Procedimiento Civil, 32 L.P.R.A. Ap. II.

## IV

En cuanto al tercer señalamiento de error, nos parece claro que las partes recurridas nunca renunciaron a la defensa de prescripción.

La Regla 6.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que la prescripción es una defensa afirmativa que queda renunciada si no se plantea oportunamente. Véanse: *Texaco P.R., Inc. v. Díaz*, 105 D.P.R. 248, 250 (1976); *Epifanio Vidal, Inc. v. Suro*, 103 D.P.R. 793, 794–795 (1975), y *Ramos v. Trans Oceanic Ins. Co.*, 103 D.P.R. 298, 300 (1975).

Ese precepto del derecho requiere que determinemos el momento en el cual las partes recurridas advinieron al conocimiento de que los artículos no identificados en las demandas serían formulados en el juicio como causas de acción. Es desde ese momento que comenzó a correr el término razonable con que contaba esa parte para levantar la defensa de prescripción. Esto, tomando en cuenta lo dispuesto en la Regla 5.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que dispone:

> *REGLA 5. LAS ALEGACIONES PERMITIDAS*
> *5.1. Alegaciones*
> Las alegaciones permitidas serán una demanda y una contestación; una reconvención y una réplica a la misma; una demanda contra coparte y una contestación a la misma; una demanda contra tercero, si una persona que originalmente no era una de las partes es emplazada de acuerdo con lo dispuesto por la Regla 12; y una contestación de dicho tercero si éste hubiere sido emplazado. No se permitirá ninguna otra alegación, pero el tribunal podrá exigir que se presente una réplica a una contestación o una contestación de tercero.

Del expediente del caso se desprende que no fue hasta el 11 de diciembre de 1995 que la parte demandante, en el Informe de Conferencia Con Antelación al Juicio, expuso que su teoría del caso incumbía la publicación de cuarenta y dos (42) artículos y no sólo los diecinueve (19) identifica-

dos en las diferentes versiones de su demanda. En ese informe esa parte indicó que los cuarenta y dos (42) artículos serían parte de su prueba documental.

Las partes recurridas presentaron ese mismo día su contestación a la segunda demanda enmendada, incluyendo la cuestión de prescripción de los artículos no identificados debidamente en la demanda. Esa parte posteriormente, el 12 de diciembre de 1995, presentó su Moción Solicitando Orden In Limine y Desestimación por Prescripción.

Con razonable prontitud, las partes recurridas presentaron la defensa de prescripción. Así lo hicieron luego de advenir al conocimiento a través del Informe de Conferencia Con Antelación al Juicio, de que la parte demandante, aquí peticionaria, pretendía utilizar los artículos nunca mencionados explícitamente en sus demandas como causas de acción.

## V

Recuérdese que el periodismo es el arte de informar la noticia. Ese es un proceso que requiere el mayor cuidado para salvaguardar y trasmitir la verdad. La percepción que un periódico o sus periodistas tengan sobre una misma noticia ciertamente puede variar. Nótese que dos (2) artículos pueden presentar reportajes diametralmente distintos, aunque versen sobre el mismo tema. Los artículos pueden enfatizar sobre diferentes aspectos de la noticia, o contener una perspectiva subjetiva sobre lo acontecido, o causar una impresión diferente en la mente de cada lector. Además, un mismo periódico puede publicar una serie de artículos, varios que difamen a una parte mientras que otros no lo hacen. Desde el tono hasta el nivel de profundidad con el que se examina y se expone lo cubierto, cada artículo es sustancialmente distinguible de otro, aunque todos sean publicados por el mismo periódico y se refieran

a la misma persona o a un mismo tema. Por lo tanto, una parte que demanda por difamación tiene que alegar específicamente cuáles artículos son difamatorios.

Por los fundamentos expuestos, confirmaríamos la Resolución del Tribunal de Circuito de Apelaciones y disentimos de la opinión mayoritaria.