**7. §5001. Requisitos de los contratos de prenda e hipoteca**

*"Son requisitos esenciales de los contratos de prenda e hipoteca:*

*(1) Que se constituya para asegurar el cumplimiento de una obligación principal.*

*(2) Que la cosa pignorada o hipotecada pertenezca en propiedad al que la empeña o hipoteca.*

*(3) Que las personas que constituyan la prenda o hipoteca tengan la libre disposición de sus bienes o en caso de no tenerla, se hallen legalmente autorizadas al efecto."*

**8.** El tenedor de unos pagarés tiene a su favor una presunción de que adquirió el instrumento por causa justa y onerosa. *Arroyo Pratts v. Tribunal Superior*, 98 D.P.R. 149 (1969).

# 2002 DTA 139

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
### PANEL SUSTITUTO

DIOMEDES ORTIZ MALAVE, NILDA ELBA RODRIGUEZ Y
LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA
Apelantes-Apelados

v.

LUIS JAIME MEAUX, EDNA RIVERA Y LA SOCIEDAD
LEGAL DE GANANCIALES POR ELLOS COMPUESTA
Apelados-Apelantes

Núms. KLAN-1997-01338 / KLAN-1997-01340

San Juan, Puerto Rico, a 10 de septiembre de 2002

Panel integrado por su Presidente, el Juez Soler Aquino
y los Jueces Colón Birriel y Escribano Medina

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Se acude ante este Tribunal mediante dos (2) recursos de apelación independientes uno del otro: KLAN-97-01338 y KLAN-97-01340. El primero de éstos, KLAN-97-01338, fue presentado el 10 de diciembre de 1997, por quienes ante el foro apelado constituyeron los demandantes, Diómedes Ortiz Malavé, Nilda Elba Rodríguez y la Sociedad Legal de Gananciales, compuesta por ambos (en adelante los *"apelantes"*). El segundo de los recursos, KLAN-97-01340, también se presentó el 10 de diciembre de 1997, pero por quienes ante el foro apelado constituyeron los demandados, Luis Jaime Meaux, Edna Rivera y la Sociedad Legal de Gananciales, compuesta por ambos (en adelante los *"apelados"*). Ambas partes acuden insatisfechos de una *"Sentencia"* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante el *"TPI"*), el 1 de agosto de 1997, y archivada en autos copia de una notificación enmendada de la sentencia el 22 de octubre del mismo año. El referido dictamen declaró *"ha lugar"* la reclamación de los apelantes, sobre daños y perjuicios, condenando a los apelados al pago de $18,403, más las costas del pleito.

Mediante nuestra *"Resolución"* de 30 de enero de 1998, ordenamos la consolidación de los recursos. Tras otros incidentes y perfeccionados los recursos, mediante nuestra Sentencia del 13 de junio de 2000, modificamos aquella parte del dictamen apelado, que no consideró como daños cierto costo de acarrear un material de relleno y los gastos de regarlo y compactarlo, quedando en efecto y vigor el resto del dictamen. Así modificado el dictamen, devolvió el caso ante el TPI, a los fines de que determinara, a la luz de la prueba ofrecida por los apelantes, los referidos daños, si algunos, los que serían añadidos a la compensación ya adjudicada a éstos.

Inconformes con nuestra Sentencia, los apelados (Luis Jaime Meaux, Edna Rivera y la Sociedad Legal de Gananciales por ellos compuesta) recurrieron ante nuestro Tribunal Supremo, mediante recurso de *Certiorari*, Número CC-2000-805. El Tribunal Supremo, mediante opinión emitida el 4 de abril de 2002, revocó nuestra Sentencia y devolvió el caso para que considerásemos cierta prueba documental presentada en evidencia por las partes, prueba que no tuvimos ante nuestra consideración al disponer del recurso, y que según los apelados era pertinente para evaluar una determinación del TPI en torno a una controversia sobre colindancias entre fincas. Dicha prueba documental consiste de: a) plano preparado por el Ing. Eladio Rodríguez; b) fotografías presentadas por los demandados (los apelados); c) planos topográficos y otros documentos que acompañaron el informe del perito Jaime Isern Piñero; d) plano de mensura del agrimensor César Dávila Santana presentado por la parte demandante; e) mapa para tasadores del gobierno de Puerto Rico del área en controversia de 10 de diciembre de 1979, mapa número 299-069 presentado por la parte demandada; f) plano de mensura de propiedad del Sr. Jaime Meaux radicado en el Bo. Arenas de Cidra, Puerto Rico, preparado por el Ing. William

Rodríguez; y g) ampliaciones certificadas de fotos del área en controversia de la oficina de fotogrametría de la Autoridad de Carreteras de Puerto Rico tomadas los días 13 de mayo de 1992, 8 de marzo de 1990, 10 de marzo de 1988 y 24 de marzo de 1977.

Así las cosas, mediante Resolución de 10 de junio de 2002, solicitamos en calidad de préstamo al TPI los autos originales del caso de *Diómedes Otero Malavé, et al v. Luis Jaime Meaux, et al,* Civil Número EDP90-0189; así como toda aquella prueba, que tuvo ante su consideración el TPI para la solución del caso. Luego de realizadas las gestiones pertinentes fueron traídas a nuestra consideración los autos originales, así como la prueba documental, *supra,* entre éstas, las cuatro (4) fotos en blanco y negro tomadas por la División de Fotogrametría de la Autoridad de Carreteras en los años 1990, 1988 y 1977 (Identificación 10 (a-d) parte demandada; marcada como Exhibit 9 de la parte demandada con objeción de la parte demandante). Siguiendo el mandato de nuestro Tribunal Supremo, estamos en posición de resolver, con el beneficio los autos originales, así como la prueba documental, *supra,* no sin antes exponer brevemente los hechos pertinentes a ambos recursos.

## II
El 9 de mayo de 1990, los apelantes presentaron una demanda reclamando a los apelados haber entrado y extraído tierra sin su autorización; por sí, sus empleados o agentes, de un predio de su propiedad, "*de forma ilegal, intencional y negligente*". Alegadamente, los apelados entraron en la propiedad de los apelantes y extrajeron tierra de la misma, para utilizarla como relleno en su propiedad, la que colinda (por el Oeste) con la parcela propiedad de los demandantes-apelantes. Sostienen, además, que aun cuando se les había solicitado, los apelados nunca desistieron de la extracción de tierra; y como consecuencia de esto, los apelantes fueron objeto de serias amenazas. Razón por la cual, solicitaron del foro recurrido se les compensaran los daños y/o depreciación en el valor de su terreno, las angustias y sufrimientos mentales sufridos y otra partida para costas y honorarios de abogado. Por su parte, los apelados contestaron la demanda. Negaron los hechos esenciales y levantaron ciertas defensas especiales y/o afirmativas.

Tras otros incidentes procesales, el 11 de diciembre de 1991, el TPI emitió Orden designando al Ingeniero Jaime Isern Piñero como perito tasador, anticipando que se le concedería carácter y naturaleza concluyente a las recomendaciones de dicho perito, lo que no fue objetado en ese momento por ninguna de las partes. Luego de varios trámites, con fecha de 7 de noviembre de 1992, el Ingeniero Jaime Isern presentó su informe. Siendo celebrada finalmente, la vista en su fondo los días 30 de septiembre, y 1-3, 7 y 28 de octubre de 1996. En ésta, las partes tuvieron oportunidad de presentar prueba documental y testifical, incluyendo prueba pericial. Sometido el caso, el foro recurrido emitió, el 1 de agosto de 1997, la sentencia objeto de nuestra consideración. Inconformes con el dictamen, como hemos mencionado ambas partes acudieron a este foro en recursos de apelación independientes.

## III
A- Discusión de los errores señalados por los apelantes, Diómedes Ortiz Malavé, Nilda Elba Rodríguez y la Sociedad de Gananciales por ellos compuesta.

Los errores presentados por el matrimonio Ortiz Rodríguez, en esencia, se circunscriben a que el foro apelado: a) no les permitió prueba sobre el costo de reponer el predio afectado con la extracción de tierra a su condición original; b) el no considerar como daños el costo de acarrear el material de relleno y los gastos para regarlo y compactarlo; c) al no concederles una partida por sufrimientos y angustias mentales, y d) no imponer honorarios de abogado por temeridad e intereses desde la presentación de la demanda.

[E]n nuestra jurisdicción rige la norma procesal de que las alegaciones simplemente cumplen con el propósito de bosquejar "*a grandes rasgos, cuáles con las reclamaciones, de forma tal que la parte demandada quede notificada de la naturaleza general de las contenciones en su contra y pueda comparecer a defenderse si*

*así lo desea.* " (Citas Omitidas.) *Reyes Castillo v. Cantera Ramos, Inc.,* 139 D.P.R. 925, 929 (1996). Por lo cual no se exigen fórmulas técnicas para la redacción de las alegaciones. (Citas Omitidas.) *Meléndez v. El Vocero de P.R.,* 144 D.P.R. 389, 395 (1997). Para precisar los asuntos en controversia, las partes tienen el deber de utilizar los mecanismos de descubrimiento de prueba, según proveen nuestras Reglas de Procedimiento Civil. Véase, *Meléndez Vega v. El Vocero de P.R., supra,* a las págs. 395-396. A tales efectos, en *Sierra v. Tribunal Superior,* 81 D.P.R. 554, 560 (1959), se indicó que:

"*[E]n el procedimiento civil moderno se acepta que las alegaciones sólo tienen una misión: notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes. Para precisar con exactitud cuáles son las verdaderas cuestiones en controversia y aclarar cuáles son los hechos que deberán probarse en el juicio, es imprescindible recurrir a los procedimientos para descubrir prueba*".

Según se desprende de los autos, el foro apelado no le permitió a los apelantes presentar prueba sobre el costo en que tendrían que incurrir para reponer el predio afectado (con la extracción de tierra) a su condición original, a consecuencia de lo cual, no reconoció la partida de daños que hubiera correspondido al costo de acarrear el material de relleno hasta el lugar donde se realizó la extracción, los gastos para regarlo y compactarlo. La posición de los apelados, al respecto, giró en torno a la corrección de la actuación del foro sentenciador por cuanto no podía admitir prueba sobre daños especiales, no alegados en la demanda.

Ciertamente, la Regla 7.4 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que: *"[c]uando se reclamen daños especiales, se detallará el concepto de las distintas partidas*", porque de lo contrario se renuncian. *Blas Toledo v. Hospital Nuestra Señora de Guadalupe,* 146 D.P.R. 267, 344 (1988). No obstante, no es necesario una especificidad total. Los métodos de descubrimiento de prueba podrían ser suficientes para lograr la mayor especificidad deseada. José A. Cuevas Segarra, *Tratado de Derecho Civil,* Tomo I, **Publicaciones J.T.S.,** 2000, a la pág. 232.

Bajo las disposiciones del Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, aquél que como consecuencia de sus actos u omisiones culposos o negligentes le causa daños a otro, viene obligado a reparar el daño causado. Así, la reparación puede verificarse en una de dos maneras:

"*(a) la reparación natural o reintegración en forma específica, o (b) la indemnización en dinero; que la mencionada primera alternativa, o sea, la de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño, constituye la solución ideal; que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible, y que la forma en que habrá de efectuarse la reparación la determinarán los tribunales tomando en consideración las características particulares de cada caso.* " *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 454 (1985).

Aunque en la práctica resulta difícil conceder la reparación *in natura* de los daños reclamados (por lo que los tribunales optan, en muchas ocasiones, por el "*camino más fácil*" la indemnización en dinero), la realidad es que ambas alternativas resultan ser mutuamente excluyentes". *Rodríguez Cancel v. A.E.E., supra,* a la pág. 455.

Según establecen los apelantes, la alegación número nueve (9) en su "*Demanda Enmendada*" señala que: "*[c]omo consecuencia de los actos ilegales, intencionales y negligentes de los demandados, la parcela de los demandantes sufrió daños y/o merma en su valor que se estiman razonablemente en exceso de Cien Mil Dólares ($100,000.00)*". Ciertamente, la merma en el valor de que pudo ser objeto la finca de donde se extrajo la tierra, constituye una partida de daños especiales sobre la cual el tribunal entendió no procedía compensación alguna. (Escrito de Apelación de los apelantes, Sentencia, a la pág. 10 del apéndice). En adición, los apelantes no alegaron, ante nosotros, se haya cometido dicho error, por lo que no habremos de abundar al respecto.

De otro modo, los daños a la propiedad que los apelantes alegan haber sufrido, constituyen otra partida de

daños especiales que debió ser detallada en la demanda. (Véase, Irizarry Yunqué, Carlos J., *Responsabilidad Civil Extracontractual: Un estudio Basado en las Decisiones del Tribunal Supremo de Puerto Rico*, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, San Juan, 1995, a la pág. 346. No obstante, el foro recurrido entendió probados unos daños ascendentes a $18,403.00, en concepto del *"valor del material extraído"* por los apelados (Escrito de Apelación de los apelantes, Sentencia, *supra*). Tal adjudicación constituye, en sí misma, el reconocimiento expreso (de una porción) del daño a la propiedad que reclaman haber sufrido los apelantes. Entonces, la controversia que nos ocupa ya no gira en torno a si el foro recurrido reconoció o no un reclamo sobre un daño especial; sino, si debió permitírseles a los apelantes, presentar prueba sobre el costo que conllevaría reponer el predio afectado con la extracción a su condición de origen.

Como expresáramos anteriormente, el *"daño de la parcela"* de los apelantes, claramente constituye un daño especial, que fue atendido por el foro recurrido en la medida en que adjudicó el valor o daño causado por la extracción de material a la propiedad. Con su actuación: (a) reconoció la capacidad de los apelantes para reclamar los daños sufridos en su propiedad, y (b) entendió oportuno indemnizar económicamente tales daños, en lugar de exigir, como primera alternativa, la reparación in natura de la propiedad afectada.

Ahora bien, habiendo reconocido el reclamo de los daños sobre la propiedad de los apelantes, el foro recurrido falló en considerar la totalidad de la prueba, dirigida a un mismo fin: llevar a su estado natural el predio objeto de la extracción. No sería razonable si dejáramos de reconocer el costo de un material que, de otra forma, no podría llegar por cuenta propia al lugar de donde fue originalmente extraído. Evidentemente, no se trata de unos cuantos *"saquitos"* o *"cubitos"* de tierra que pueden ser transportados y esparcidos sin mayor dificultad. Según se desprende de la propia *"Sentencia"* del Tribunal, *supra*, *"se removieron unos 12,268.37 metros cúbicos del área en controversia"*. [Énfasis suplido] (Escrito de Apelación de los apelantes, Sentencia, a la pág. 6 del apéndice) Ciertamente, el reclamo de los apelantes (para que se le compensen los gastos en que necesariamente habrán de incurrir para transportar el relleno hasta el lugar de donde se realizó la extracción, regarlo y compactarlo), surge como secuela directa del hecho de la extracción misma. No se trata de daños especiales distintos e independientes, sino de un mismo daño especial que necesariamente surge de la misma reclamación, reconocida por el propio tribunal.

A tales efectos, el Tribunal Supremo ha indicado que: *"allí donde ocurre la total reparación in natura, no cabe la indemnización en dinero, y donde se indemniza en dinero la totalidad del daño sufrido, no procede la reintegración en forma específica"*. *Rodríguez Cancel v. A.E.E.*, *supra*.

Visto de otro modo, si el foro recurrido hubiera optado por exigirle a los apelados la reparación *in natura* del daño reconocido, entonces, necesariamente, sólo existiría una posibilidad: reconocer que el llevar la propiedad a su estado original requiere no tan sólo del material para relleno, sino de un ente que acarree, localice y compacte el mismo. El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Toda vez que el foro recurrido decidió indemnizar económicamente los daños sufridos, los apelantes tenían derecho a que se le reconociera el valor del material extraído (correspondiente al material de relleno), además de los costos en que necesariamente tendrían que incurrir para llevar su propiedad a su estado original. Y es que ello tiene que ser así; de lo contrario, estaríamos alentando al *"enriquecimiento injusto"* de los que actúan sin consideración a los agraviados. Véase, Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, San Juan, **Publicaciones J.T.S.,** 1980, Vol. I, pág. 82.

Aun cuando de la minuta del 20 de enero de 1994, en la vista ante el Hon. Rafael E. Castro Pérez (Escrito de Apelación de los apelados, Minuta, a la pág. 34 del apéndice), surge que el foro recurrido no tuvo ante sí, ni las partes podrían producir un plano topográfico, para reflejar cómo era la finca con antelación a los hechos en que se presentó la demanda, determinamos que ello no es razón suficiente para descartar la necesidad de compactar un relleno que habría de ser depositado en el lugar donde el perito del tribunal determinó se había

extraído una cantidad específica de material. Coincidimos con los apelantes cuando alegan que el actuar de otro modo llevaría un mensaje nefasto a nuestro sistema de convivencia social, dentro de un marco de respeto a las leyes, a las personas y a la propiedad ajena, pues *"cuando cualquier ciudadano de Puerto Rico necesitara relleno, con extraerlo de la propiedad vecina se economiza lo que le costaría transportarlo desde la cantera hasta su propiedad"*, ello sin incluir los gastos para regar y compactarlo. En consideración a lo cual, entendemos que erró el foro recurrido, toda vez que se limitó a considerar, como daños, el costo del material extraído.

Los apelantes sostienen, además, en su señalamiento de error identificado previamente con la letra c, *supra*, que *"[e]l tribunal ni adjudicó ni denegó la reclamación de daños por sufrimientos y angustias, y no hizo expresión alguna en la Sentencia sobre este particular"*. (Escrito de Apelación de los apelantes, *supra*.) No les asiste la razón, por cuanto el foro recurrido indicó que dicha parte *"[n]o nos puso en posición de adjudicarle ningún otro daño a su finca, ni probó daños mentales"*. [Énfasis suplido] (Escrito de Apelación de los apelantes, Sentencia, a la pág. 10 del apéndice.) Evidentemente, el foro recurrido adjudicó dicha reclamación, resultado con el cual los apelantes no quedaron conformes.

No obstante, obsérvese que durante el trámite del perfeccionamiento del recurso que nos ocupa, luego de múltiples resoluciones al efecto, el 11 de marzo de 1999, emitimos "Resolución" ordenándole a las partes presentar una transcripción de la prueba, para cumplir con las disposiciones de nuestro reglamento concediéndoles, para ello, un término final e improrrogable de treinta (30) días. Posteriormente, según expusiéramos en nuestra *"Resolución"* de 9 de julio de 1999, eximimos a los apelantes de presentar una exposición narrativa de la prueba (o transcripción) conforme a la Regla 19 de nuestro Reglamento, pues manifestaron en su escrito en *"Oposición a Moción de Desestimación"* de 29 de junio de 1999, a la pág. 2, que *"entre los errores señalados [...], no se incluyó señalamiento alguno que tenga que ver con la apreciación de la prueba"*; razón por la cual no acogimos la *"Moción de Desestimación"* presentada por los apelados, de 1 de junio de 1999 (donde se exponía detalladamente la falta de iniciativa e inacción de los apelantes para gestionar, en forma adecuada, el perfeccionamiento de su recurso).

Habiendo expuesto los apelantes que no procedía desestimar su recurso, pues no necesitaríamos de una exposición narrativa o transcripción de la prueba, *"por no haber incluido señalamiento alguno que tuviera que ver con la apreciación de la prueba",* dimos por renunciado aquella parte del señalamiento de error identificado con la letra c, *supra*, que incidía sobre la apreciación que de la prueba hiciera el foro recurrido (testigos que declararon durante la vista en su fondo). Hacer otra cosa implicaría permitirle a dicha parte decidir qué disposiciones reglamentarias deben acatarse y cuándo. No obstante, y sólo para fines de discusión, aun si consideráramos la exposición narrativa de la prueba presentada por los apelados, de ésta tampoco surge que los apelantes hayan probado su reclamo sobre los sufrimientos y angustias mentales.

Tampoco les asiste la razón a los apelantes en cuanto a su cuarto y último señalamiento de error. La Regla 44.1(d) de las de Procedimiento Civil, *supra*, dispone que cuando una parte haya procedido con temeridad, el tribunal deberá imponerle, mediante sentencia, el pago de una suma por concepto de honorarios de abogado. El propósito principal de la citada Regla 44.1(d), *supra, "es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. Rivera v. Tiendas Pitusa, Inc.,* Op. de 28 de junio de 1999, **99 J.T.S. 107**, a la pág. 1246; *Corpack Art Printing v. Ramallo Brothers,* 125 D.P.R. 724, 737 (1990); *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 718 (1987). En tales casos, la determinación de si un litigante ha procedido con temeridad o no, descansa en la sana discreción del tribunal sentenciador y la cuantía concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. Véase, *Cotto Morales v. Calo Ríos,* 140 D.P.R. 604, 626 (1996); *CNA Casualty de P.R. v. Torres Díaz,* 141 D.P.R. 27, 44 (1996); *Bonilla Medina v. P.N.P.,* 140 D.P.R. 294, 305-306 (1996); *Elba A.B.M. v. U.P.R.,* 125 D.P.R. 294, 328-329; *Ramírez v. Club Cala,* 123 D.P.R. 339,

350 (1989). Le corresponde a la parte que alega ello ocurrió, demostrar que el error fue debido al abuso de la discreción del foro apelado. *CNA Casualty de P.R. v. Torres Díaz*, 141 D.P.R. 27, 44 (1996).

En el recurso ante nos, primeramente, los apelantes fallaron en demostrar que el foro apelado abusó de su discreción al no encontrar a los apelados incursos en temeridad. En segundo lugar, cuando el foro recurrido reconoció la existencia de una controversia legítima sobre colindancia, en la que intervino y adjudicó derechos, legitimó la capacidad de los apelados para alegar un derecho que entendían les correspondía. Obsérvese que no existe temeridad cuando el asunto a resolver es complejo y novel; cuando un litigante actúa a base de una apreciación errónea de un aspecto de derecho y no hay precedentes que arrojen luz; o existe una discrepancia honesta relativa al derecho aplicable a los hechos del caso. *García Larrinúa v. Lichting*, 118 D.P.R. 120 (1986).

En autos, las alegaciones de los apelados demuestran una discrepancia honesta, relativa al derecho aplicado (problema sobre colindancia); por lo que no encontramos que hayan incurrido en tácticas dilatorias o que haya ocasionado que la parte apelante incurriera en gestiones evitables. En consecuencia, el Tribunal de Primera Instancia no incurrió en el error alegado.

B- Discusión de los errores de los apelados, Luis Jaime Meaux, Edna Rivera y la Sociedad de Gananciales compuesta por ellos (KLAN-97-01340):

Procedemos, ahora, a atender los señalamientos de error de los apelados, los que en esencia se limitan a establecer que: (a) que la colindancia que separa los predios entre las partes no discurre por el lugar establecido por el foro recurrido; (b) que dicho foro debió aplicar las normas legales relativas a la reivindicación de inmuebles; (c) erró el Tribunal al no considerarlos como poseedores de buena fe; (d) erró además al concluir que fueron negligentes, y (e) al conceder una cuantía en daños basada en prueba especulativa.

El primero de ellos, sostiene que la colindancia que separa los predios entre las partes litigantes no discurre por el lugar que determinó el foro recurrido. A tales extremos, indican que *"no está en discusión que a base de los documentos que decidió usar el Ing. Insern [testigo pericial nombrado por el tribunal para emitir informe pericial], la única conclusión a que podía llegarse es que la colindancia discurría por donde alegaba la parte demandante."* Por ende, que no se trataba de un problema de credibilidad, sino de dilucidar *"si la colindancia debía fijarse a base de [...] la abundante prueba tanto testifical, pero especialmente documental, que demostraba que estos documentos [los utilizados por el Ing. Insern] eran crasamente incorrectos"*. (Escrito de Apelación de los apelados, a la pág. 12) Más aún, indican que, de considerarse la evidencia documental presentada por ellos (ante el foro sentenciador), necesariamente habría que reconocer que los apelantes no cumplieron con las normas relativas a la reivindicación de bienes inmuebles, y que fueron ellos (los apelados) los que lograron establecer su derecho al predio en cuestión. (Escrito de Apelación de los apelados, a la pág. 20)

Reiteradamente, hemos señalado que en cuanto a la apreciación de la prueba desfilada ante el tribunal de instancia, el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 43.2, la cual en lo pertinente dispone que:

*"...las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos..."*.

Por ello, nuestro Tribunal Supremo ha establecido que no debemos intervenir con las determinaciones de hechos que hace un tribunal de instancia y sustituir nuestro criterio, por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su *demeanor*. *Ramos Acosta v. Caparra Dairy Inc*, 113 D.P.R. 357, 365 (1982).

*"... y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer, incluso, más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación...".* Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975).

De ahí la norma trillada de *"no intervenir con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto"*. Monllor Arzola v. Sociedad de Gananciales, 138 D.P.R. 600, 610 (1995); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez Cruz v. Hospital La Concepción, 115 D.P.R. 721 (1984). No obstante, *"[e]l arbitrio del juzgador de hechos es respetable, mas no es absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal"*. (Citas Omitidas.) Ramos Acosta v. Caparra Dairy, Inc., supra.

Así pues, los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que *"del examen de la totalidad de la evidencia, el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hecho están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida"*. Véase, Maryland Casualty Co. v. Quick Const. Corp., 90 D.P.R. 329, 336 (1964). Además, es principio cardinal de derecho que este Tribunal, en el ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándose en la misma posición que los tribunales de instancia y pudiendo aun adoptar su propio criterio en la apreciación de ella. Hernández Barreras v. San Lorenzo Construction, Op. de 20 de febrero de 2001, **2001 J.T.S. 22**, págs. 877-878; Moreda v. Rosselli, Op. Per Curiam de 3 de marzo de 2000, **2000 J.T.S. 69**, pág. 950; Cruz v. Centro Médico de P.R., 113 D.P.R. 719, 721 (1983); Velázquez v. Ponce Asphalt, 113 D.P.R. 39 (1982); Zambrana v. Hospital Santo Asilo de Damas, 109 D.P.R. 517, 522 (1980); Castro v. Meléndez, 82 D.P.R. 573, 576 (1961). No obstante, ... nuestra decisión debe estar fundada en la prueba vertida en el juicio por los peritos y la prueba documental. En ausencia de prueba, no es nuestra función establecer a este nivel apelativo los elementos requeridos por el Art. 1802 del Código Civil. Ríos Ruiz v. Mark, 119 D.P.R. 816, 821-822 (1987).

Para impugnar el dictamen del foro apelado y refutar los documentos utilizados por el Ing. Isern (para concluir como lo hizo), los apelados sostienen que debió considerarse: (a) una foto aérea del 1977, de la División de Fotogrametría, de la Autoridad de Carreteras de Puerto Rico; (b) un mapa para tasadores del E.L.A. de Puerto Rico de 1979; y (c) fotos aéreas del 1988, 1990 y 1991, de la División de Fotogrametría, de la Autoridad de Carreteras de Puerto Rico. Aducen que dichos documentos proponían claramente la *"diferencia en vegetación entre la finca del demandante y la finca del demandado. Lo que permite concluir que ya para esa fecha [1977], el predio en controversia formaba parte de la finca del demandado."* (Escrito de Apelación de los apelados, a la pág. 14).

Hemos evaluado los documentos admitidos en evidencia, en especial, las fotos que los apelados sometieron en evidencia, sin que de ellos pudiéramos determinar cómo éstos aducen que la presencia de cierta vegetación señala la verdadera colindancia entre los predios. A nuestro juicio, las fotos sometidas en evidencia por los apelados, no son suficientes para derrotar las conclusiones periciales del Ingeniero Isern; quien más que tener ante sí unas fotos, tuvo la oportunidad de estar físicamente en ambas fincas, consideró los documentos que le sometieron ambas partes, se reunió con sus peritos, y finalmente utilizando los conocimientos en ingeniería que lo capacitaron para fungir como perito en el caso, pudo replantear los puntos a fin de determinar la colindancia de las fincas.

Por otra parte, los apelados indican, además, que *"los planos que tenía Jaime Meaux y la verja existente señalaban que el predio en controversia formaba parte de su finca."* (Escrito de Apelación de los apelados, a la pág. 21) En vista de lo cual, al actuar en lo que entendían les pertenecía, lo hacían de buena fe, por lo que, conforme establece nuestro Código Civil, podían hacer suyos los frutos *"industriales"* percibidos, sin venir obligados a abonar nada de ello. 32 L.P.R.A. secs. 1142, 1145-46, 1164, 1166 y 1172.

De la Sentencia apelada o de la exposición narrativa de la prueba, presentada y aprobada por el foro apelado, no surge que se hubiera considerado aspecto alguno relativo a la buena o mala fe de los apelados. Mucho menos sobre la capacidad de hacer suyos los *"frutos industriales"* percibidos. En consideración a lo cual, no habremos de intervenir, en esta etapa apelativa, con dicho asunto. Así nos adherimos a la norma vigente de que en apelación nos abstendremos de adjudicar cuestiones no planteadas en primera instancia. *Trabal Morales v. Ruiz Rodríguez,* 125 D.P.R. 340, 351 (1990). Véase además, *Elías Vega, et al v. Chenet, et al,* Op. de 16 de febrero de 1999, **99 J.T.S. 11**; *Misión Industrial de P.R. v. Junta de Planificación, et al;* 146 D.P.R. 64 (1998); *Dorante v. Wrangler of P.R.,* 145 D.P.R. 408 (1998).

En cuanto a los dos últimos señalamientos de error de los apelados, relativos a que no se cumplieron los requisitos necesarios por el Art. 1802, *supra,* para imponerles responsabilidad, los discutiremos simultáneamente.

En estos errores, los apelados alegan, en síntesis, que: (a) la cuantía del daño reconocido por el foro recurrido fue uno basado en prueba especulativa, dado que *"[e]l cálculo del relleno removido por el Sr. Meaux fue uno especulativo"* (Alegato Suplementario de los Apelantes Luis Jaime Meaux, Edna Rivera, etc., a la pág. 15), y (b) que su conducta no fue constitutiva de la negligencia requerida por el citado artículo, toda vez que de la prueba no haber sostenido que la finca les pertenecía, cuando menos *"estableció que de buena fe [los apelados] entendía[n] que era su finca".* (Alegato Suplementario de los Apelantes Luis Jaime Meaux, Edna Rivera, etc., a la pág. 14)

En lo que respecta a la cuantía de los daños concedidos por el foro apelado, sólo habremos de mencionar que el perito de dicho foro, explicó y detalló, durante la vista en su fondo, el método utilizado para llegar al cómputo en cuestión, relativo a la cantidad de relleno que fue extraído por los apelados. (Exposición Narrativa Enmendada de la Prueba, a las págs. 31-32). Cómputo técnico que no fue objetado por los apelados durante la vista en su fondo y que, finalmente, fue aceptado por su propio perito (el Ing. Figueroa), al indicar que *"conforme a las tablas y datos"* era uno *"razonable".* (Exposición Narrativa Enmendada de la Prueba, a la pág. 32) Así mismo, estamos convencidos que la determinación que sobre negligencia hiciera el foro apelado quedó sostenida por los hechos que dicho tribunal tuvo ante su consideración. A tales extremos, indicó (Escrito de Apelación de los Apelantes, Sentencia, a la pág. 9 del apéndice):

*"Una vez Ortiz acudió a la finca para indicarle que los trabajos se estaban realizando en su predio y no en el de Meaux, éste debió paralizar la obra y verificar si lo alegado por Ortiz era correcto. No lo hizo y los trabajos continuaron por varias semanas. Es importante recordar que desde que adquirió su predio, Meaux conocía que la cabida no era la que reflejaba la escritura de compraventa y que había diferencia en la colindancia con la finca de Ortiz. Ante estas circunstancias, como hombre prudente y razonable Meaux debió, en ese momento "investigar lo que ignoraba en lugar de asumir riesgos innecesarios que pudieran haber sido evitados mediante una investigación oportuna". Al continuar las obras penetrando en el predio del codemandante y extrayendo tierra, incurrió en responsabilidad."*

Consideramos que dichas expresiones son suficientes para configurar la negligencia que sirvió de base para el ejercicio válido de la discreción judicial al respecto. Razones por las cuales determinamos que estos errores tampoco fueron cometidos.

En mérito a lo expuesto, modificamos aquella parte del dictamen apelado, que no consideró como daños el costo de acarrear el material de relleno y los gastos para regarlo y compactarlo, quedando en efecto y vigor el resto del dictamen. Así modificado, devolvemos el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, a los fines de determinar, a la luz de la prueba ofrecida por la parte apelante, los referidos daños, si algunos, los que serán añadidos a la compensación ya adjudicada a los apelantes.

Lo pronunció y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General